SUZANNE D., Appellee

v.

STEPHEN W., Appellant.

Superior Court of Pennsylvania.

Argued Oct. 30, 2012.

Filed April 22, 2013.

Arthur D. Feldman, Pittsburgh, for Appellant.

Elisabeth Bennington, Pittsburgh, for Appellee.

BEFORE: MUSMANNO, J., WECHT, J., and COLVILLE, J.*

* Retired Senior Judge assigned to the Superior Court.

OPINION BY WECHT, J.:

Stephen W. ("Father") appeals from the December 21, 2011 order dismissing in part and granting in part his exceptions to the August 5, 2011 hearing officer's recommendation for child support. Suzanne D. ("Mother") cross-appeals from the same order, which granted in part and dismissed in part her cross-exceptions. After careful review, we affirm.

The trial court summarized the case history as follows:

> Mother and Father were married on May 15, 1993 and separated in December 2007. Two (2) minor children were born of the marriage: [J.W.] and [C.W.] ("Children"). The parties enjoy equally shared physical custody of the Children. Mother filed a Complaint in Divorce on May 13, 2008. Following trial to address the parties' economic claims, Hearing Officer Miller (then acting as Master) entered a Report and Recommendation dated August 31, 2009. Both parties filed Exceptions, then entered into a Consent Order of Court dated October 28, 2009 withdrawing their Exceptions and making the August 31, 2009 Report and Recommendation a Final Order of Court. The August 31, 2009 Recommendation provides, in relevant part, "A guideline child support order shall be entered based upon the parties' actual net incomes with alimony." A Decree in Divorce was entered in November 6, 2009.
>
> On May 5, 2010, Mother presented a Petition to Schedule Child Support Hearing, as no child support order had been entered pursuant to the August 31, 2009 Recommendation. The parties attended a support conference/hearing on September 7, 2010, at which time the matter was declared complex, and an Interim Order was entered requiring Father to pay $1,200 per month plus $250 per month toward arrears. The parties stipulated that the effective date of the Order would be January 1, 2010. On April 27, 2011, Mother filed a Motion to Award Counsel Fees, Costs and Expenses pursuant to 23 Pa.C.S.A. § 4351(a). An Order of Court was entered that same day consolidating Mother's counsel fee claim with the complex support hearing. Two (2) days of trial were held before Hearing Officer Miller on May 3, 2011 and July 21, 2011.
>
> On August 5, 2011, Hearing Officer Miller entered a Recommendation and seven (7) page Explanation. The Recommendation provided, in relevant part, that Father was to pay $1,347 per month from January 1, 2010 through December 31, 2010, and $1,547 per month from January 1, 2011 onward. The Hearing Officer found Mother and Father's net monthly incomes to be $4,690 and $11,576, respectively, in 2010, and $2,597 and $12,164 per month, respectively, in 2011. The Hearing Officer further recommended that Mother should not be responsible for any of the Children's medical expenses in 2010, as father was fully reimbursed for said expenses by his father, Paternal Grandfather [James W., Sr.]. As Paternal Grandfather did not reimburse Father for any medical expenses after September 1, 2010, Hearing Officer Miller recommended that Mother be responsible for 18% of the [C]hildren's unreimbursed medical expenses in 2011, provided that Mother agrees in advance that the medical providers are appropriate. Similarly, it was further recommended that Mother should contribute 18% toward the Children's extracurricular activities, provided that the parties agree in advance that said activities are reasonable and appropriate. Mother was not required to contribute toward extracurricular activity

expenses in 2010. Arrears were set at $13,857.20 as of August 5, 2011. Finally, Hearing Officer Miller recommended that Father pay $22,000 toward the $31,257 in counsel and expert fees incurred by Mother in the course of the child support litigation.

Exceptions and Cross–Exceptions to the Hearing Officer's Recommendation were filed by Father and Mother, respectively. Briefs were submitted and oral argument was held on October 28, 2011. On December 21, 2011, this Court entered an Order disposing of both parties' Exceptions. The Order provided, in relevant part, for a $500 upward deviation in Father's support obligation due to the funds received by Father from Paternal Grandfather. As Paternal Grandfather stopped reimbursing Father for medical expenses after September 1, 2010, the Court ordered Mother to pay 29% (her share of the income in 2010) of the $3,440 in unreimbursed medical expenses incurred by Father during the time period from September 2, 2010 until December 31, 2010. This amount, $997.60, was deducted from Father's arrears balance. The Court required Mother to contribute 18% toward unreimbursed medical expenses in 2011, and did not make any requirement for Mother's approval of medical providers. The Court deferred to the Hearing Officer's recommendation that Mother contribute 18% toward extracurricular activity expenses in 2011, but removed the provision that the parties must agree in advance that the activities are reasonable. The Court did not require Mother to contribute toward extracurricular activity expenses incurred in 2010. As it appeared to this Court that Father's arrears were correctly calculated, the Court remanded that matter to Hearing Officer Miller as a precautionary measure only, and specifically instructed the Hearing Officer to give Father credit for all payments made since the entry of the September 7, 2010 Interim Order. No credit was given for medical and extracurricular expenses paid by Father, except for the $997.60 credit for Mother's share of the 2010 unreimbursed medical expenses. The Court deferred to the Hearing Officer's recommendation regarding counsel fees.

Father filed a timely Notice of Appeal on January 17, 2012 and his Statement of Matters Complained of on Appeal on February 8, 2012. Mother filed a Notice of Cross–Appeal on January 23, 2012 and her Statement of Matters Complained of on Appeal on February 6, 2012.

Trial Court Opinion ("T.C.O."), 3/16/2012, at 1–4 (citations to record and footnote omitted).

Father presents five issues for our review:

1. Whether the Trial Court committed an error of law or abused its discretion in finding that the additional funds provided to [Father] by his father were gifts rather than loans?

2. Whether the Trial Court committed an error of law or abused its discretion in finding that the additional funds provided to [Father] by his father, if found to be gifts, warranted an upward deviation from the Support Guidelines?

3. Whether the Trial Court committed an error of law or abused its discretion in finding that the facts and circumstances of this case and the applicable law warranted an upward deviation from the Support Guidelines?

4. Whether the Trial Court committed an error of law or abused its discretion in finding that the additional

expenses in 2010 for health care and for extracurricular activities for the children should not have been allocated between the parties and that the basic support obligation should not have been adjusted, because the funds used to pay those expenses came from [W.] family Trusts or were reimbursed by [James A.W., Sr.]?

5. Whether the Trial Court committed an error of law or abused its discretion in deferring to the Hearing Officer's recommendation for an award to Mother for attorney's fees, in applying a needs allocation standard to Mother's claim for attorney's fees, and/or in otherwise awarding attorney's fees and expenses of $22,000, under the facts and circumstances of this child support case?

Father's Brief at 10.

Mother presents one issue in her cross-appeal: "Did the Trial Court commit an error of law or abuse its discretion when it concluded that the regular periodic and regular transfer of cash by [Father's] father to [Father] was not income available for support, even though the transfers were made at [Father's] request, used to maintain his lifestyle and amounted to over $350,000 for the period in question?" Mother's Brief at 44.

We review a child support order for a clear abuse of discretion. *Isralsky v. Isralsky,* 824 A.2d 1178, 1186 (Pa.Super.2003). Such an abuse of discretion is shown by a misapplication of law or an unreasonable exercise of judgment. *Id.*

■ Father's first issue challenges the determination that the money he receives from his father, James A. W., Sr. ("Grandfather"), is a gift. Father argues that the money he received was a series of loans that he is obligated to repay. Father points to the demand note that he signed and his intention to repay the money as evidence of a loan. Finally, Father notes that, if he does not repay the loan, the balance will be deducted from his inheritance. Father argues that, because the money was a loan, the trial court erred in considering it a gift. Father's Brief at 18–21.

Mother urges us to find that the trial court was acting within its discretion when it concluded that the payments were gifts. Mother asserts that the evidentiary record supports the trial court's conclusion. Mother also contends that the demand note is not proof that the payments were loans because the note only requires payment of the lesser amount of three options: $100,000, which is less than Father has received; the unpaid principal; or the amount demanded, which could be nothing. Mother's Brief at 20–23.

The trial court found that the hearing officer did not make a definitive finding as to whether the payments from Grandfather to Father were gifts or loans. The trial court, in reviewing the record, did not find Father's assertion that the payments were a loan to be credible. Father testified that, prior to separation, he received gifts from Grandfather to assist the living expenses, but that, after separation, these same payments became loans. The trial court found that the demand note itself was unpersuasive since it was possible that Father would not be required to make any repayment under the terms of the note. Because Grandfather's testimony demonstrated an unfamiliarity with the note and its terms, the trial court did not believe that the payments were loans. The trial court found that, after subtracting the amounts Father received for attorney's fees and for the Children's expenses, Father received approximately $11,844 per month from Grandfather in 2010 in addi-

tion to his $11,576 monthly income and approximately $9,863 per month in 2011 in addition for his $12,164 monthly income. T.C.O. at 9–16.

■■■ For purposes of child support, income is defined by statute:

"Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302. While this definition is expansive, it includes neither gifts nor loans. In general, loans are not included in the calculation of income for support. *Fichthorn v. Fichthorn,* 368 Pa.Super. 305, 533 A.2d 1388, 1390 (1987). Similarly, we have held that a gift is not income for purposes of determining child support. *Jacobs v. Jacobs,* 884 A.2d 301, 307 (Pa.Super.2005). Because a gift is given not in exchange for services, it does not meet the statutory definition of income. *Id.* However, a gift may be considered as a reason for deviating from a guideline amount of child support. *Id.*

The record supports the trial court's conclusion that the payments from Grandfather to Father were gifts. First, the hearing officer equivocated regarding whether the payments were loans or gifts:

Father asserts it is a 'loan.' That may be, but it is unclear whether he will ever have to repay it. However, even if it is not a loan it is at most a gift. . . .

Explanation, 8/5/2011, at 1. Mother's expert, Beth Mascetta, testified that, by the terms of the demand note, the note could be satisfied with no actual repayment should no amount be demanded by Grandfather. Notes of Testimony ("N.T."), 5/3/2011, at 119–21. Father confirmed that Grandfather could demand nothing on the note, but also could demand the full amount. N.T., 7/21/2011, at 68–69. Ms. Mascetta also testified that, given the amount Father received and given his salary, Father would not be able to repay Grandfather. N.T., 5/3/2011, at 162.

Father testified that Grandfather gave the parties a gift of $400,000 while Father was in law school to cover the parties' living expenses. N.T., 5/3/2011, at 182. Father testified that Grandfather continued to gift Father with cash in varying, but substantial, amounts on a yearly basis. N.T., 5/3/2011, at 184. Father testified that, as of July 2008, these payments converted to loans under the executed demand note, which include payments made directly to Father as well as payments made to others on Father's behalf. N.T., 5/3/2011, at 187–88. Father testified that he expected to repay the loans after he was no longer paying alimony and child support and that, if he does not repay the loans, his inheritance will be reduced by the outstanding balance. N.T., 5/3/2011, at 188. Father testified that his employer, Grandfather's company, paid for his per-

sonal vehicle and car insurance, his housekeeper, his health insurance, and his legal expenses, but that the housekeeper and legal expenses were part of the loan he received from Grandfather. N.T., 5/3/2011, at 226. Father testified that he asks Grandfather for money as needed. N.T., 7/21/2011, at 47–48. Father asserted that he tried to budget his expenses to avoid asking for additional money. N.T., 7/21/2011, at 48. Father believed that his monthly mortgage payment was $2,539, but did not know how much he spent on groceries, dining out, utilities, home alarm system, cell phone, lawn care, cable television, dry cleaning, insurance, or real estate taxes. N.T., 7/21/2011, at 49–51.

Grandfather testified that he transferred money to Father in both 2010 and 2011 whenever Father asked for funds. N.T., 7/21/2011, at 93. Grandfather testified that there were no repayment terms for the loans to Father, but that there was an interest rate. N.T., 7/21/2011, at 94. This contradicted Grandfather's deposition testimony, wherein he stated that there was no interest rate and no note. N.T., 7/21/2011, at 95–96.

The record supports the trial court's finding that Father was not credible and that the payments were gifts. Grandfather had a history of supporting Father's lifestyle prior to separation. According to Father's testimony, suddenly, after separation, Grandfather stopped providing gifts and started providing loans. Given that testimony, as well as Grandfather's lack of familiarity with the note and the terms of the loan, and the timing of the switch from gifts to "loans," the trial court's credibility determination is well-supported in the record. The trial court properly exercised its discretion in determining that the payments to Father were gifts.

■ Because Mother also contends that the trial court improperly categorized the payments to Father, we turn next to her sole issue. Mother asserts that the payments to Father should not have been categorized as gifts, but rather as income. Mother argues that the payments covered Father's living expenses, so that these payments were analogous to income. Mother seeks to distinguish *Jacobs*, in which gifts were used as investments instead of covering everyday expenses. Mother asserts that many other states treat periodic gifts that are used for living expenses as income, and urges us to adopt such a rule. Mother's Brief at 45–54.

Father argues that gifts were not given in exchange for services and were not income under the statute. Father also contends that since he receives a salary for his work with Grandfather's company, these additional payments cannot be considered compensation for services rendered. Father's Reply Brief at 10–14.

The trial court did not find Mother's argument persuasive. First, it considered that the statute does not include gifts in its definition of income. Second, the court noted that income from other household members, while also used for living expenses, is treated only as a basis for deviation and not as income for support. Third, the court found that *Jacobs*, while emphasizing that gifts are often used for investment, did not make a finding as to how the gifts were used by the party in that case. T.C.O. at 5–8.

Mother relies upon three cases: *Kolbe v. Kolbe*, *Funk v. Funk*, and *Jacobs*. In *Kolbe*, the husband's father gave the husband cash. 186 Pa.Super. 256, 142 A.2d 365, 366 (1958). The father attempted to make the payment look like a loan. We deemed unclear the issue of whether the gift from the father was included as income or not. *Id.* In *Funk v. Funk*, we determined that the trial court erred in

not considering as income "monthly financial assistance" the wife received from her parents. 376 Pa.Super. 76, 545 A.2d 326, 334 (1988). However, no other details were provided about these payments, except to say there was insufficient evidence to determine whether the aid was in the form of loans. *Id.* at 328 n. 1. In fact, we identified that the error lay in the trial court's failure to determine whether the aid was a loan or income. *Id.*

*Jacobs* developed against the background of *Kolbe* and *Funk,* cases which, at most, support the proposition that the court should determine whether aid is in the form of a gift or loan. *Jacobs* held unequivocally that gifts were not income for support purposes. *Jacobs,* 884 A.2d at 307. We stated that gifts were not provided in exchange for services rendered, so that they were not income under the statute. Next, we distinguished gifts from lump-sum awards, which are identified as income in the statute, reasoning that lump-sum awards generally were used like a source of income for payment of day-to-day expenses. Then, we analogized gifts to inheritances, determining that both were used for similar purposes: savings, investment, or capital expenditures. *Id.*

■ Here, Mother makes a persuasive argument that, given the language of *Jacobs,* Father uses the gifts from Grandfather for day-to-day expenses in the same way as the *Jacobs* court described lump-sum awards. Moreover, Father's and Grandfather's testimony is consistent with that characterization. Therefore, Mother asserts, these gifts should be treated like lump-sum awards and considered income for support. However, the fact that Father used these gifts to live beyond his salary does not mean they should be treated as income. *Jacobs* makes clear that gifts are not income for support purposes. Further the statute does not define income

to include gifts. Monetary gifts from family members are a common practice, and would not have been unknown to the drafters of the statute. Had the General Assembly wished to include gifts as income for support, it would have done so. We are not empowered to add language to the statute simply because it may seem equitable to do so. We must decline Mother's invitation to expand the definition of income to include gifts of the sort at issue here.

■■ Father's next two issues question whether the trial court erred in creating an upward deviation in Father's support obligation based upon the gifts he received from Grandfather. Rule 1910.16–5 states that the court may deviate from the guideline amount, but must state its reason for the deviation. Pa.R.C.P. 1910.16–5(a). The court also must consider the following factors in determining whether to deviate from the guideline child support obligation:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16–5(b). The trier of fact is to consider all the relevant factors in

determining whether a deviation is warranted; any one factor is not necessarily determinative. *Elias v. Spencer*, 449 Pa.Super. 359, 673 A.2d 982, 985 (1996). Further, in the support order, the factfinder must explain its basis for deviation. *Id.* Again, gifts are a consideration that may support a deviation. *Jacobs*, 884 A.2d at 307.

Father argues that, although Mother requested the gifts from Grandfather be construed as income, she did not specifically seek a deviation based upon those gifts. Father asserts that the trial court interpreted *Jacobs* incorrectly, insofar as *Jacobs* speaks only to the corpus of gifts. Because there was no corpus here, as the gifts were consumed, there were no assets to be considered as a deviation factor. Child support was based upon actual income pursuant to an August 31, 2009 order that was not appealed. Because the use of actual incomes became law of the case, Father argues that the court should have considered only Father's actual income and not the gifts, especially inasmuch as Mother had not yet reached her earning capacity. Father's Brief at 22–27.

Mother contends that she preserved the issue in her cross-exceptions. Mother asserts that the fact that there is no "corpus" is irrelevant, and that Father should not benefit from the fact that he spent these gifts instead of saving them. Mother maintains that consideration of her actual income instead of her earning capacity should not affect a deviation when Father's income is much greater than her earning capacity and Father receives the gifts in addition to his income. Mother's Brief at 24–29.

The trial court considered the relevant factors. The trial court found that Father received substantial gifts in addition to the money Father received or was reimbursed for the Children's medical expenses and extracurricular activities, J.W.'s private school tuition, and Father's legal expenses. Order, 12/21/2011, at 4. Based upon gifts averaging $11,844 per month in 2010 and $9,863 per month in 2011, and the likelihood that these gifts would continue, the trial court ordered a $500 per month upward deviation from the guideline amount. *Id.* The trial court determined that these gifts had been made regularly since 2004 and, based upon Grandfather's testimony, would continue. T.C.O. at 17. Based upon these substantial gifts, the trial court found it appropriate to deviate. T.C.O. at 18 (citing Pa.R.C.P. 1910.16–5(b)(5), (9)).

The trial court did not abuse its discretion in basing an upward deviation upon the gifts that Father receives. The record reflects that Father's monthly income is almost doubled by Grandfather's gifts. This is in addition to the expenses for the Children that Grandfather pays or reimburses. There is no indication in the record that Grandfather will cease providing money to Father as Father requests it. Gifts are an appropriate factor to consider in determining whether a deviation is warranted. Given the substantial gifts and the disparities in the parties' incomes, there was no abuse of discretion in the trial court's determination that a deviation was warranted.

■ Father next argues that the trial court erred in its treatment of medical and extracurricular expenses. Rule 1910.16–6 provides that unreimbursed medical expenses and other needs of the children shall be allocated between the parents in proportion to their net monthly income. Pa.R.C.P. 1910.16–6(c), (d). "Other needs" has been interpreted to include costs associated with extracurricular activities. *Holland v. Holland*, 444 Pa.Super. 251, 663 A.2d 768, 769 (1995). While Rule 1910.16–6 uses mandatory language, the statute provides that the court may require the

parents to pay a percentage of uncovered medical expenses. 23 Pa.C.S.A. § 4326(e); see *D.H. v. R.H.*, 900 A.2d 922, 927 (Pa.Super.2006).

Father argues that the trial court erred in not requiring Mother to pay a proportionate share of medical and extracurricular expenses from January 1, 2010 through September 1, 2010. Citing *Silver v. Pinskey*, 981 A.2d 284 (Pa.Super.2009), Father contends that, when a third party pays the expenses, the parents are not thereby relieved from contributing to the expenses. Father argues that he provided the medical and extracurricular expenses of the Children retroactively to January 1, 2010, and that Mother should have been ordered to pay her share of those expenses. Father's Brief at 27–35.

Mother maintains that, from January 1 through September 1, 2010, Father was reimbursed fully for medical and extracurricular expenses from Grandfather directly or from a family trust, such that Father had to spend none of his own money on these items. Mother contends that the trial court had discretion to deviate from Rule 1910.16–6 based upon the facts of the case. Mother argues that she should not have to pay a share of expenses to which Father did not contribute. Mother's Brief at 30–36.

The trial court found that all the expenses which Father claimed from January 1 through September 1, 2010 were paid by or reimbursed by Grandfather. The trial court did not find *Silver* to be controlling because that case addressed the obligation to pay for health insurance under Rule 1910.16–6, which specifically references third-party payment for insurance. Because Father did not contribute to these expenses, the trial court did not require Mother to pay for them. T.C.O. at 20–23.

The record supports the trial court's findings. Mother testified that she learned in September 2010 that Father was no longer seeking reimbursement for medical and extracurricular expenses from the various family trusts. N.T., 5/3/2011, at 16. Mother testified that Father had been reimbursed for private school tuition and summer camps. N.T., 5/3/2011, at 18. Mother agreed that speech therapy, social skills therapy, and individual therapy were reasonable and appropriate for C.W., given C.W.'s autism diagnosis. N.T., 5/3/2011, at 41–44, 48–49. However, Mother did not believe that the expenses should be allocated because the trusts had always paid for those expenses, and this continued until September 2010. N.T., 5/3/2011, at 72–74, 78–79.

Father testified that C.W.'s therapies are beneficial and necessary. N.T., 5/3/2011, at 193–98. Father stated that both Children attended camps, and that J.W. participated in extracurricular activities. N.T., 5/3/2011, at 201. Father also testified that the cost of private school tuition was $19,700 per year. N.T., 5/3/2011, at 28–09. Father stated that, prior to September 2010, private school tuition and extracurricular expenses were reimbursed from the family trusts. N.T., 7/21/2011, at 14–15. Father would forward the amount he spent on the Children to the bank with Grandfather's approval, and Father then would receive a reimbursement via wire transfer. N.T., 7/21/2011, at 29–30. Father confirmed that the reimbursements stopped five days prior to the entry of the interim support order, with the exception of two additional reimbursements for private school tuition. N.T., 7/21/2011, at 15, 59. Father testified that he either was not reimbursed for any of these expenses after September 2010 or the reimbursement or direct payments were made part of the loan from Grandfather. N.T., 5/3/2011, at 212–13.

The record is clear that Grandfather had a history of paying for the Children's expenses, and continued to do so until September 1, 2010. *Silver* speaks to a third party paying for health insurance. But such a scenario is contemplated by Rule 1910.16–6(b), which requires the parent to pay a proportionate share of the insurance premium when a third party provides health insurance. *Silver,* 981 A.2d at 302. This case deals with two other sections: Rule 1910.16–6(c) and (d), neither of which includes the third-party payor language of the health insurance section. It was not error for the trial court to conclude that the difference in language of the rule sections mandated a different result.

The trial court did not abuse its discretion in declining to require Mother to pay a share of the expenses incurred between January 1 and September 1, 2010. The rule contemplates that expenses incurred shall be allocated between the parties. Here, the expenses were not incurred by the parties because Grandfather paid them. Grandfather did so according to his long-standing practice. When Grandfather chose to stop subsidizing the Children's expenses, the parties began incurring these expenses. At that time, the expenses required allocation between the parties. Before that time, it would have been inequitable to require Mother to pay a share of an expense that Father did not incur. We find no error in the trial court's ruling.

In Father's final issue, he challenges the trial court's decision to award Mother counsel fees. Mother sought counsel fees pursuant to 23 Pa.C.S.A. § 4351, which states:

(a) **General rule.**—If an obligee prevails in a proceeding to establish paternity or to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel and other reasonable costs and expenses incurred by the obligee and the obligee's witnesses.

23 Pa.C.S.A. § 4351(a). When deciding whether to award counsel fees under this provision, the trial court must consider the totality of the circumstances, and enjoys broad discretion to fashion an appropriate award. *S.M.C. v. W.P.C.,* 44 A.3d 1181, 1189 (Pa.Super.2012). While awards should not be based solely upon financial needs, the relative financial positions and needs of the parties form a relevant consideration, and we have affirmed awards based upon disparate incomes. *Id.* at 1190. Factors to be considered in awarding fees include whether the conduct of the obligor impeded entry of a support order, whether the obligor presented a reasonable defense, whether the obligor failed to support the child, and whether the parties have disparate financial positions and needs. *Krebs v. Krebs,* 944 A.2d 768, 778 (Pa.Super.2008). The overriding concern is the best interest of the child. *Id.*

Father argues that neither party engaged in bad faith litigation, but that Mother's actions increased the cost of the litigation. Father asserts that he never contested that he had a child support obligation, and that he paid his support as ordered. Father argues that counsel fee awards are not required, and should not be based solely upon needs. Father's Brief at 35–43.

Mother contends that Father's actions extended the litigation, including: failure to agree to a continuance; assertion of the issue of expenses that had been paid for by Grandfather; refusal to submit discovery, which in turn required Mother to take depositions; service of large discovery requests upon Mother; conduct of lengthy depositions; and refusal to allow telephone testimony from an out-of-state witness. Because Father's legal fees were paid by

Grandfather, Mother argues that it was equitable for Father to pay a portion of her litigation expenses. Mother's Brief at 37–41.

The trial court adopted the hearing officer's recommendation that Father pay $22,000 in Mother's counsel fees. The trial court determined that unreasonable conduct was not required for an award of counsel fees, and that the totality of the circumstances warranted such an award. The trial court found that neither party engaged in unreasonable conduct, but that the best interests of the Children would be affected if Mother was compelled to pay her entire counsel fee obligation. The parties' incomes were disparate, and Father paid none of his own legal fees. Given Mother's income, the trial court recognized the difficulty for her to pay her legal fees, as well as the effect on the Children in the event she was not awarded fees. On those bases, the trial court determined that the circumstances warranted a fee award. T.C.O. at 24–27.

Mother requested $28,000 in counsel fees. N.T., 5/3/2011, at 19. Ms. Mascetta, Mother's expert, testified that her bill to Mother was $5,503.99. N.T., 5/3/2011, at 130. Mother's attorney testified that her fees for child support litigation were $31,257.19. N.T., 7/21/2011, at 104. The trial court found that Father's monthly net income in 2011 was $12,164 and that he received an average of $9,863 per month in gifts from Grandfather. T.C.O. at 16–17. The court found that Mother's monthly net income was $2,597. T.C.O. at 26.

The trial court did not err in awarding fees. The trial court considered the totality of the circumstances, including the disparity in the parties' financial circumstances and the fact that Father had incurred no personal obligation for legal fees. The overriding concern in making a counsel fee award is the Children's best interests. Given Mother's modest monthly income, she would be hard pressed to pay her legal bills while maintaining the standard of living to which the Children are accustomed. The trial court properly considered the effect on the Children should Mother have to pay the entirety of her legal fees from her monthly income. We discern no error in the award.

Order affirmed. Jurisdiction relinquished.