2015 PA Super 108

| | | |
|---|---|---|
| J.P.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| W.E.D., | : | No. 775 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered April 14, 2014,
in the Court of Common Pleas of Allegheny County
Family Court Division at No. FD 96-003833-005

BEFORE: FORD ELLIOTT, P.J.E., BOWES AND DONOHUE, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:                    **FILED MAY 05, 2015**

This is an appeal from a child support order entered in the Court of Common Pleas of Allegheny County requiring appellant, W.E.D. ("Father"), to pay $1,365 per month for the support of his two children retroactive to May 1, 2013. We affirm.

Father and appellee, J.P.D. ("Mother"), are the parents of two children, V.D., born in 2003, and W.D., born in 2006. The parties divorced on November 3, 2008. Pursuant to the parties' Property Settlement Agreement, a consent order was entered on September 11, 2008 awarding Mother the allocated monthly amount of $1,500 for child support and $300 for alimony for a period not to exceed 60 months, the term to expire on August 31, 2013.

On May 1, 2013, Father filed a petition seeking modification of his child support order due to the upcoming expiration of the alimony term. On September 6, 2013, the parties appeared before Hearing Officer Peggy Ferber. At the conclusion of the hearing, Hearing Officer Ferber terminated the alimony and modified the child support order to $1,500 per month on an interim basis pending conclusion of the proceedings.

The hearing continued on December 5, 2013. The parties appeared with their experts who had assessed Father's earning capacity for the purpose of calculating his child support obligation. Father's expert assessed him an earning capacity of $45,725 per year. Father's expert took into account the earnings of a computer operator and network administrator with Father's level of experience. Father has no formal education and is no longer personally certified, factors which lessen his potential to earn a higher paying salary. Father testified he works approximately 50 hours a week and earns a salary of $20,000. Mother's expert assessed an earning capacity of $70,833 per year to Father.

There was no issue regarding Mother's income. Mother is employed as an elementary school teacher and beginning in September of 2013 was scheduled to earn a salary of $51,903 for the 2013-2014 school year. Mother testified her net monthly income was $2,979.39 and her monthly budget ranges from $3,820 to $4,320.

Following the hearing, Hearing Officer Ferber entered a recommendation and temporary order directing Father to pay $926.65 monthly to Mother retroactive to May 1, 2013. Mother filed timely exceptions in which she argued the hearing officer erred in crediting the testimony of Father's expert over that of her expert; the hearing officer failed to add back 100% of Father's expenses that Father testified were paid by his current wife; and the hearing officer erred in failing to grant a deviation under Pa.R.C.P. 1910.16-(b)(3), (5), and (7). Father filed cross-exceptions stating the hearing officer erred in determining his annual income.[1]

Following oral argument, the trial court sustained, in part, Mother's and Father's exceptions. The trial court determined Father's income for child support purposes should be calculated at $3,694 per month. This figure was arrived at by using Father's expert's earning capacity of $45,725 per year, $8,880 per year in non-taxed car and phone benefits were added to Father's yearly gross income, and applying applicable taxes. Mother's net monthly income was increased to $3,135 per month. At Mother's request, the trial court assigned both dependency exemptions from the children to her for tax purposes. Using $3,394 per month for Father and $3,135 per month for Mother, and after applying the appropriate shared custody adjustment,

---

[1] While the hearing officer stated she found Father's expert more credible than Mother's expert, she proceeded to use the earning capacity favored by Mother's expert.

Father's guideline child support per month equaled $665. However, the trial court added an upward deviation of $701 due to the substantial additional income in Father's household. As of May 1, 2013, Father's total child support award was set at $1,365. Father filed a timely appeal.

The sole issue for our consideration is as follows:

> Did the trial court err and abuse its discretion in ordering a deviation from the presumptively correct recommended guideline amount of child support when the deviation ordered was in an amount greater than 100% of the actual guideline amount of child support, contrary to the evidence presented at trial and in an amount that is punitive and confiscatory?

Father's brief at 6.

Our standard of review in child support matters is well settled:

> Appellate review of support matters is governed by an abuse of discretion standard. When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

***R.K.J. v. S.P.K.***, 77 A.3d 33, 37 (Pa.Super. 2013) (citations and quotation marks omitted).

J. A01043/15

Support actions are governed by the Pennsylvania Rules of Civil Procedure 1910.1 through 1910.50. Initially, Pa.R.C.P. 1910.16-1(d) provides:

> **Rule 1910.16-1.  Amount of Support.  Support Guidelines**
>
> **(d)  Rebuttable Presumption.**  If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded.  The support guidelines are a rebuttable presumption and must be applied taking into consideration the special needs and obligations of the parties. The trier of fact must consider the factors set forth in Rule 1910.16-5.  The presumption shall be rebutted if the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate.

Pa.R.C.P. 1910.16-1(d).  Next, as directed, we turn to Pa.R.C.P. 1910.16-5 which provides:

> **Rule 1910.16-5.  Support Guidelines.  Deviation**
>
> **(a)  Deviation.**  If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
>
> > *Note*:  The deviation applies to the amount of the support obligation and not to the amount of income.

**(b)** **Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1)  unusual needs and unusual fixed obligations;

(2)  other support obligations of the parties;

(3)  other income in the household;

(4)  ages of the children;

(5)  the relative assets and liabilities of the parties;

(6)  medical expenses not covered by insurance;

(7)  standard of living of the parties and their children;

(8)  in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and

(9)  other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5.

On appeal, Father argues the upward deviation, which was an amount greater than 100% of the actual guideline amount of child support, is punitive and confiscatory as well as contrary to the evidence presented at trial. We first consider the evidence presented which the trial court summarized as follows:

Father testified that he does not pay for any of his own expenses, such as mortgages, car payments, utilities, or entertainment. The couple earns approximately one million dollars in annual net income. Wife owns several successful recruiting companies in many different industries including accounting, engineering, office professionals and business. Father and his new wife own multiple properties including their residential home, which was purchased for $360,500; a weekend townhouse in Seven Springs, which Father testified cost more than $100,000; as well as a lot bought from Wife's parents which was purchased for approximately $240,000. Father also testified he leases a 2011 Cadillac for a monthly payment of $940.

Additionally, Father testified that Wife takes care of all finances in the home. Father could provide little information when asked about household expenses, admitting he does not even open the mail. Not only does Wife's income provide Father with all his daily needs, Wife's income provides Father the opportunity to travel and take vacations. Based on Father's testimony, Father has demonstrated that the other household income in the home provided by his Wife is more than sufficient to pay for any essential needs as well as a multitude of luxuries. Thus, it is clear that Father's entire income is available for child support purposes.

Trial court opinion, 7/9/14 at 7.

In his brief, Father states that "[w]hile he does not actually write the checks, he contributes to the payment of the expenses." (Father's brief at 16.) Additionally, he complains "it was unreasonable for the Trial Court to determine, as it did, that Father contributes nothing to the expenses of his household, does not pay for any of his own expenses or necessities, or does not rely on his income to support himself or his wife." (*Id.*)

Our review indicates Father's own testimony belies his argument. Father was asked if he paid his own expenses, and he replied, "I pay no household bills." (Notes of testimony, 12/5/13 at 53.)

> Question: You don't pay the mortgage, the taxes or anything like that?
>
> Father: I don't even open the mail. My wife does all that.
>
> . . . .
>
> Question: So you have absolutely no idea how much your family spends each month?
>
> Father: I don't pay the bills. We have been through this many, many times.

*Id.* at 53, 55.

Based on the evidence presented, we find the record supports the trial court's determination that all of Father's income was available for child support.

Having determined that the evidence presented at trial was not contrary to the trial court's finding that all of Father's income was available for child support, we turn to the crux of this matter, that is, the upward deviation amount that is more than 100% of the guideline amount. Father points out the trial court relies on the case of **Suzanne D. v. Stephen W.**, 65 A.3d 965 (Pa.Super. 2013); however, Father posits the case is factually distinguishable.

In **Suzanne D.**, one of the primary issues was whether the substantial monetary gifts that Father received from his grandfather should be considered income for child support purposes. The record indicated that Father's monthly income was almost doubled by his grandfather's gifts. **Id.** at 973. In deciding the monetary gifts could not be considered income for child support purposes, we observed that the domestic relations statute does not define gifts as income.[2] **Id.** at 972. We explained: "Monetary gifts from family members are a common practice, and would not have been unknown to the drafters of the statute. Had the General Assembly wished to include gifts as income for support, it would have done so." **Id.**

---

[2]     **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.

However, this court reasoned that the monetary gifts could be considered in awarding an upward deviation under Pa.R.C.P. 1910.16-5(a). The trial court determined these substantial monetary gifts had been made regularly since 2004, and based on grandfather's testimony, the gifts would continue. In addition to the disparity in income between Father and Mother, the court also noted grandfather paid for other expenses incurred by the children; such as, medical expenses, extracurricular activities, private school tuition, as well as Father's legal expenses. (**Id.** at 973.) The trial court concluded an upward deviation of $500 per month was called for.[3] We found no abuse of discretion in this regard.

Instantly, Father complains his and Mother's incomes are not disparate, but rather comparable. While that may be true, Mother does not live with a new spouse who nets one million dollars per year in income. Similar to the grandfather in **Suzanne D.**, Father's new wife, Susan, provides a substantial amount, if not all, of the income for household expenses as well as paying for Father's and the children's medical expenses through her business. The trial court recognized the $701 deviation was large, but explained:

> Pa.R.C.P. 1910.16-5(b)(3) provides that other household income may be a factor to consider when deciding whether to deviate from the support guidelines. In this particular case, the other

---

[3] Father was ordered to pay $1,347 per month for one year, and $1,547 per month thereafter. The $500 upward deviation was approximately a 32½% deviation.

> household income provided by Father's new wife, Susan, allows Father to have a higher percentage of his income available to pay his child support obligations. The support guidelines presume that part of the obligor's income will be spent on his/her own expenses and necessities. Testimony from Father at the December 5, 2013 hearing, revealed that Father does not pay for any of his own expenses or necessities and therefore does not rely on his income to support himself or his wife.

Trial court opinion, 7/9/14 at 6. The trial court noted Father would not be paying over 50% of his net monthly income toward child support. (*Id.* at 8.) Father's total combined child support obligation is $1,365 per month that includes the $665 guideline child support plus $701 upward deviation. The trial court observed that this amount is approximately 37% of Father's earning capacity which allows Father to retain over 50% of his earning capacity for himself. (*Id.* at 9.) We find no abuse of discretion. *See Ricco v. Novitski*, 874 A.2d 75, 82 (Pa.Super. 2005), citing *Ball v. Minnick*, 606 A.2d 1181, 1191 (Pa. 1992) (It is well settled that "a court has reasonable discretion to deviate from the guidelines if it appears to be necessary and the record supports the deviation.").

Father's contention that the upward deviation awarded by the trial court is unjust and confiscatory rings hollow. "Both parents have an equal obligation to support their children in accordance with the capacity and ability of each to do so." *Sutliff v. Sutliff*, 489 A.2d 764, 771 (Pa.Super. 1985), *affirmed*, 528 A.2d 1318 (Pa. 1987).

> A parent is required to sacrifice personal luxuries to provide his or her children with their needs. The only limitation is that a support order should allow for reasonable living expenses of the paying parent and not be punitive or confiscatory.

*Id.* (internal citations omitted). We would be hard-pressed, on this record, to find that the upward deviation does not allow for Father's reasonable living expenses. While Father complains the 100% upward deviation is outrageous, again, based on this record, we disagree. Father can well afford an additional $701 per month for the support of his two children. If Father's circumstances change, *i.e.*, his household income decreases, he can always petition for modification.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2015