J-A20007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY SULTZBACH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD SULTZBACH | : | No. 1683 MDA 2022 |

Appeal from the Order Entered November 4, 2022
In the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): 2022-0737,
Pacses No. 591301478

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED:  DECEMBER 28, 2023**

Ashley Sultzbach ("Mother"), appeals from the order entered in the Lancaster County Court of Common Pleas which applied a downward deviation that totally eliminated Ronald Sultzbach's ("Father") obligation for child and spousal support. Specifically, Mother challenges the trial court's deviation from the support guidelines, the calculation of her earning capacity, and the determination of Father's income. We affirm in part and reverse and remand in part.

The parties are husband and wife who are currently separated and in the process of divorce proceedings. They were married on October 3, 2009, and separated on August 29, 2021. On April 26, 2022, Mother filed a complaint

_____

[*] Former Justice specially assigned to the Superior Court.

for support against Father, seeking support for herself and the parties' two minor children.

Following a conference, at which the parties were unable to reach an agreement, the conference officer entered recommended findings. Relevantly, the conference officer assessed Mother an earning capacity of $15 per hour, working 30 hours a week, for an average weekly gross earning capacity of $450. The officer noted Mother lived in her father's home, where the parties had lived while together, and that Mother continued to live there rent and mortgage free. The officer also noted Mother's father had given the couple $3,000 per month since December 2016, and Mother continued to receive this gift money after the parties separated. The conference officer calculated Mother's combined monthly gross income from the gift money and the earning capacity to be $4,955.36. The conference officer utilized an average of Father's adjusted net profit from 2018 until 2021 to calculate Father's monthly net income at $6,221.36.

Based on the above findings, the conference officer found that although the guidelines warranted a monthly support amount of $498.13 combined for child and spousal support, that a downward deviation of $842 a month was appropriate "in consideration of the ongoing monthly payments made by [Father] for [Mother]'s car and car insurance. Additionally, a downward deviation is appropriate in consideration of [Mother]'s lack of expenses while residing in her father's home rent/mortgage free and in consideration of

[Mother]'s withdrawals from [Father]'s business account since the date of filing."

The trial court subsequently entered an order on June 28, 2022, dismissing the complaint for support and mirroring the support findings of the conference officer.

Mother filed a demand for a *de novo* hearing. Mother argued the conference officer erred by imputing the monthly gift received by Mother from her father as income and by applying a downward deviation in consideration of Mother's "lack of expenses". Mother argued this constituted a form of "double-dipping". Mother also argued it was error to apply a downward deviation for a "lack of expenses" in the home, as she stated she is responsible for the payment of normal living expenses such as food, clothing, cable/internet, electric, gas, lawn services, and other personal needs for her and the children. Finally, Mother challenged the conference officer's calculation of Father's income, and assessment of downward deviations for alleged withdrawals made by Mother from Father's business checking account.

The court subsequently held a *de novo* hearing and heard testimony and argument from both parties. On November 3, 2022, the trial court entered a non-financial support order providing for a downward deviation to $0.00 for Father's support obligation due to the expenses paid directly by Father and the "additional income in [Mother]'s household" based on the $3000 per month gift Mother receives from her father. Order, 11/3/2022, at 1-2. The

order also assessed Mother an earning capacity of $45,000 gross annually, in consideration of her prior employment and having no medical condition affecting her ability to be gainfully employed. The order assessed Father at an average of his self-employment income from 2018-2022, calculated at $135,191 annually. This timely appeal followed.

Mother raises the following issues on appeal:

A. Did the trial court err by applying a downward deviation of 100% to all tiers of the monthly guideline support amount when the totality of the evidence presented did not justify a downward deviation pursuant to Pa.R.C.P. 1910.16-5?

B. Did the trial court err by assessing Mother an earning capacity of $45,000 gross annually when the totality of the evidence presented did not support this determination after a review of the factors enumerated in Pa. R.C.P. 1910.16-2(d)(4)(ii)?

C. Did the trial court err by assessing Father's income at an average of his self-employment income from 2018-2022, or $135,191 gross annually, as the totality of the evidence presented justified a three-year average of Father's income, not a five-year average, as a three-year average more accurately reflects Father's current income under the support guidelines[?]

Appellant's Brief, at 4-5.

Before addressing the above issues, we must first determine the appealability of the November 3, 2022 support order. Questions concerning appealability of an order go to the jurisdiction of the court to hear the appeal and may be raised *sua sponte*. **See Interest of Z.V.**, 158 A.3d 665, 669 (Pa. Super. 2017).

If an order addresses both child support and spousal support, the child support issue is immediately appealable. **See Capuano v. Capuano**, 823

A.2d 995, 998 (Pa. Super. 2003). In contrast, the appealability of the spousal support issue depends on whether the economic aspects of a divorce are still being litigated:

> A spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved. The rationale behind this rule is that, for purposes of judicial efficiency, in the event that an initial award of interim relief is granted in error, the court has the power to make adjustments in the final settlement via the equitable distribution of marital property. Thus, when all economic matters involved in a divorce are resolved, any support order can be reviewed and corrected when the court finalizes the equitable division of the property.

*Id*., at 998–99 (citations omitted).

Here, it is undisputed that the non-financial support order was entered during the pendency of a divorce action and a divorce decree had yet to be entered. Although the support order is unallocated, it is clear a portion of the calculated guideline amount is child support. Accordingly, the child support portion of the trial court's November 3, 2022 order is final and appealable. However, because a divorce action was pending between the parties during the time of this appeal, we are constrained to find the spousal support portion of the order interlocutory and unappealable. *See id*.

And, in fact, Mother concedes that we do not have jurisdiction to address her spousal support claims. *See* Appellant's Brief, at 18, n.8. Nonetheless, she highlights that her arguments all apply equally to the spousal and child support portions of the order. *See id*. While we recognize the salience of Mother's observation, we simply do not have jurisdiction to review the spousal support

portions of the order at this time. We will therefore address Mother's arguments only as they relate to child support.

Our standard of review for a child support order is deferential:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Kimock v. Jones***, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

First, Mother argues the trial court erred in deviating from the support guidelines. In particular, she contends it was error to consider the monthly gift of $3,000 she receives each month from her father as household income in order to justify a 100% downward deviation.

The amount of support calculated pursuant to the guidelines is presumed to be the correct amount of child support. ***See*** Pa.R.C.P. 1910.16-1(d). This presumption can be rebutted where the fact finder determines that the award "would be unjust or inappropriate." ***Id***. The presumption that the guideline support amount is correct is a strong one. ***See Ball v. Minnick***, 648 A.2d 1192, 1196 (Pa. 1994). Here, the court deviated from the presumptive amount.

A trial court has discretion to deviate from the guideline amount in a support case if the record supports the deviation. *See Silver v. Pinskey*, 981 A.2d 284, 296 (Pa. Super. 2009); *see also* Pa.R.C.P. 1910.16-5(a) ("[T]he trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation."). In determining whether to deviate from the guidelines, the trier of fact must consider the following factors:

(1) unusual needs and unusual fixed obligations;
(2) other support obligations of the parties;
(3) other income in the household;
(4) ages of the children;
(5) the relative assets and liabilities of the parties;
(6) medical expense not covered by insurance;
(7) standard of living of the parties and their children;
(8) in a spousal support or alimony pendent lite case, the duration of the marriage from the date of marriage to the date of final separation; and
(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b). "The trier of fact is to consider all the relevant factors in determining whether a deviation is warranted; any one factor is not necessarily determinative." *Suzanne D. v. Stephen W.*, 65 A.3d 965, 972-73 (Pa. Super. 2013) (citation omitted).

Mother argues it was error for the trial court to consider the gift from her father as "other income in the household". Father, on the other hand, argues it was proper to consider the cash gift as household income.

At the hearing, Mother testified that she graduated in 1992 from Ohio University with a bachelor's degree in general studies. *See* N.T., Support

Appeal Hearing, 10/4/2022, at 7-8. She was last employed in 2010 at Neiman Marcus, where she sold cosmetics on a commission basis. *See id*. at 8. Mother stated she had to drive an hour and twenty minutes each way to get to this job. *See id*. at 9. Mother acknowledged that her highest earnings with Neiman Marcus was $70,000 in 2006 "when the economy was great." *See id*. at 21. However, she testified that her approximate earnings were $42,000 in her last year of employment. *See id*. Mother testified that she got let go in August of 2010 because she was not producing enough sales. *See id*. Mother stated that this was intentional because Father wanted her to collect unemployment. *See id*. Mother was pregnant with the parties' second child at the time and planned to be a stay-at-home mother. *See id*. at 8-9.

Mother has not worked outside of the home in any capacity since 2010. *See id*. at 9. Mother stated that since the separation she had sent two applications to schools to work as a teacher's aide. *See id*. at 9-10. Mother clarified that she had sent in the applications a couple days prior to the hearing but denied doing so in preparation for the hearing. *See id*. at 20. Mother acknowledged that she does not have a teaching degree but expressed her desire to go into the education field. *See id*. at 10. Mother stated that she did not want a job, she wanted a career – in teaching. *See id*. at 21. Mother testified that their children had never been in a day care or left with a childcare provider. *See id*. Mother testified that she had been approached about going back to modeling and going on QVC. *See id*. at 20. However, Mother stated

she did not know if she wanted to do that. *See id*. She also was not sure she wanted to go back into retail because "it kinda robs you of life." *Id*. at 20-21.

Mother disputed the conference officer's finding that she did not pay for any living expenses. *See id*. at 11. Specifically, Mother entered an expense sheet, showing she paid for electric, gas, oil, cable, water, and food. *See id*. Mother acknowledged that Father owned the car that she drove, and that Father continued to pay for the car and the car insurance. *See id*. at 11-12. Mother had discussed with Father that she planned to give the car back to Father as soon as possible and she would obtain her own car. *See id*. at 12. Mother also acknowledged that Father paid for her cell phone. *See id*. Mother asserted that she tried to get off the phone plan but claimed that Father had to be the one to remove her from the account. *See id*. at 13.

Finally, Mother agreed that her father had been gifting her $3,000 per month since 2016. *See id*. Mother stated that the money was gifted to the "family" or the "household". *Id*. Mother acknowledged that she continued to receive this gift money. *See id*. Mother stated she would love for the gift to stop due to not wanting her father at his age to have to take care of her. *See id*. at 24.

Mother testified that the current custody schedule was "two days on, three days off." *See id*. at 15.[1] Mother stated that she would require childcare for both children during the school year as well as the summer if she were to work 40 hours a week. *See id*. at 15-16. At the current time, Mother was staying home with the children during her custodial times. *See id*. at 16.

Mother testified that she did not pay for rent or a mortgage on the home she lives in, which is owned by her father. *See id*. at 26. During questioning about the conference officer's finding that a downward deviation was proper due to Mother's "lack of living expenses", both parties agreed on the record that Mother did pay for normal living expenses other than rent and mortgage. *See id*. at 30-31.

Father testified that he is self-employed in the financial services industry. *See id*. at 54. His income in 2021 was eighty percent commission and twenty percent advisory. *See id*. at 57. He stated that his income is never predictable. *See id*. Father explained that his income spiked in 2021 because of repurposing of client's assets. *See id*. at 56. Father was not sure if the spike would continue in 2022, so he had to anticipate lower numbers similar

_____

[1] In her appellate brief, Mother further explains this is a 2-2-3 custody schedule. *See* Appellant's Brief at 9. While the record is not clear about this, we presume this indicates a biweekly schedule where, in week one, one parent gets 5 days of physical custody interrupted by a two-day period of physical with the other parent. In week two, the parents switch their roles. *See B.T.M. v. J.N.F.*, 1734 MDA 2018 (Pa. Super. filed March 14, 2019) (unpublished memorandum).

to prior years because of the unpredictability of being self-employed. *See id*. at 58-60. Father testified that he pays for the health insurance premium for himself, Mother, and one of the children.[2] *See id*. at 70-71. Due to the spike in Father's income, the health insurance premium went up from $664.97 to $1,248 per month. He also pays for car insurance for the car Mother drives and for the cell phone plan that includes Mother's phone. *See id*. at 72.

Father confirmed that he shares custody 50/50 with Mother and that he is able to spend all of his time with the children because he works from home. *See id*. at 79. He stopped renting office space earlier in the year because of finances. *See id*. at 79, 81.

In its opinion, the trial court made the following observations in support of the downward deviation in support obligations:

> The court should further elaborate on what it initially characterized as a deviation. The court's analysis under Pa.R.C.P. 1910.16-5(b), and particularly its analysis of Pa.R.C.P. 1910.16-5(b)(3) "other income in the household" constrained the court to make the finding that [Mother] receives $3,000.00 every month from her father, and that this is likely to continue. Further, [Mother] uses this money to cover virtually all her expenses and lives in a home that her father owns and does not pay rent or cover the mortgage. The court considered all factors under Pa.R.C.P. 1910.16-5(b), and finds that this factor of "other income in the household" significantly offsets what would ordinarily fall within the guideline.

> In its November 2, 2022 order, the Court delineated its findings into three separate time periods: from 4/26/2022-6/3/2022, from 7/1/2022-8/30/2022, and finally from 9/1/2022 to present. The court initially made the downward deviation because [Father]

---

[2] The other child is on Medicaid due to unspecified health issues. *See id*. at 70.

made monthly payments for [Mother]'s car and car insurance, amounting to $842.00 per month. Additionally, the Court made a downward deviation because [Mother] does not have housing expenses as she was residing in her father's home and not paying her father any rent. While the court did not construe this exclusively as income, the court considered this amount of money as household income received that is significant enough to warrant deviation from the guidelines. This gift money, while not counted as income, should be considered as other household income while analyzing the Pa.R.C.P. 1910.16-5(b) factors. As such, the amount of other household income in [Mother]'s home warrants a deviation from the guidelines from all the relevant time periods. Finally, the Court considers this as not a simple so-called "100% deviation," as there is an interplay between [Mother]'s earning capacity and the fact that throughout relevant periods, [Mother]'s assets and household expenses have been paid by [Father] or [Mother]'s father, thus warranting a reduction.

Trial Court Opinion, 4/13/2023, at 4-5 (citations omitted). The support order itself indicates that a downward deviation to $0.00 for Father's support obligation was proper due to the expenses paid directly by Father and the "additional income in [Mother]'s household" based on the $3,000 per month gift Mother receives from her father. Order, 11/3/2022, at 1-2.

In **Suzanne D.**, one of the primary issues was whether the substantial monetary gifts that the father received from his grandfather should be considered income for child support purposes. 65 A.3d at 969. The record indicated that the father's monthly income was almost doubled by his grandfather's gifts. **Id**. at 973. In deciding the monetary gifts could not be considered income for child support purposes, we observed the domestic relations statute does not define gifts as income. **Id**. at 972. We explained: "Monetary gifts from family members are a common practice, and would not

- 12 -

have been unknown to the drafters of the statute. Had the General Assembly wished to include gifts as income for support, it would have done so." *Id*.

However, this Court reasoned the monetary gifts could be considered in awarding an upward deviation under Pa.R.C.P.1910.16–5(a). There, the trial court determined these substantial monetary gifts had been made regularly for almost a decade, and based on grandfather's testimony, the gifts would continue. In addition to the disparity in income between the father and mother, the court also noted grandfather paid for other expenses incurred by the children: medical expenses, extracurricular activities, private school tuition, as well as the father's legal expenses. *Id*. at 973. The trial court concluded an upward deviation of $500 per month was called for. We found no abuse of discretion in increasing father's child support obligation.

Initially, we note that there is an important difference between considering monetary gifts to increase a child support obligation and considering monetary gifts to decrease a child support obligation. This distinction is perhaps best encapsulated by this Court's observation that

> [a]bove all, we are mindful of the general principle that a parent's duty to support his minor children is absolute, and the purpose of child support is to promote the children's best interests. The court has no legal authority to eliminate an obligor's support obligation, where the obligor can reasonably provide for some of the children's needs.

*Silver*, 981 A.2d at 296 (citation omitted). In other words, the primary concern is the best interest of the child; that concern is then mediated by the parties' abilities to provide for themselves and the child.

- 13 -

Here, Father has made no claim that he cannot afford to pay his child support obligation, or that any change in his circumstances hinders him from doing so. Similarly, there is no evidence of record capable of supporting a finding that a reduction in Father's child support obligation is in the children's best interest. Accordingly, we conclude the trial court abused its discretion in decreasing Father's child support obligation due to the monetary gifts received by Mother. We therefore vacate the child support award and direct the court to calculate Father's obligation without considering Mother's gift income.

Mother next argues the trial court erred by assessing her an earning capacity of $45,000 pursuant to the factors enumerated at Pa.R.C.P. 1910.16-2(d)(4)(ii). With respect to earning capacity, Rule 1910.16–2(d)(4)(ii) provides the trier-of-fact shall consider the following factors:

(A) child care responsibilities and expenses;
(B) assets;
(C) residence;
(D) employment and earnings history;
(E) job skills;
(F) educational attainment;
(G) literacy;
(H) age;
(I) health;
(J) criminal record and other employment barriers;
(K) record of seeking work;
(L) local job market, including the availability of employers who are willing to hire the party;
(M) local community prevailing earnings level; and
(N) other relevant factors.

Rule 1910.16–2(d)(4)(ii).

The trial court chose to impute to Mother a $45,000 earning capacity after considering the following findings of fact:

> For all tiers of the order, [Mother]s assessed at an earning capacity of $45,000.00 gross annually in consideration of her prior employment and having no medical condition affecting her ability to be gainfully employed.

Order, 11/3/2022, at 1. The trial court expanded on its reasoning in its 1925 opinion as follows:

> In determining [Mother]'s earning capacity, the court notes that [Mother] is not of retirement age, both of her children are attending school, and she is in good health. [Mother] does not have a criminal record, nor does she have any unusual employment barriers. [Mother] has a history of employment in selling beauty products and earned upwards of $70,000.00 a year while she was working. [Mother] is college-educated and has job skills relating to her work in selling beauty products and modeling.

Trial Court Opinion, 4/13/2023, at 6-7.

After a review of the record, we cannot conclude this reasoning is an abuse of discretion. Mother complains the court's reasoning appears to be mostly based on conjecture. But this is almost always the case when addressing an earning capacity as opposed to actual income. A court must evaluate the party's income history, which, as in this case, is often not reflective of current market salaries.

Further, we note the court found that Mother had not made a serious job search. While Mother applied for part-time jobs as a teacher's aide, the court found that only working part-time as a teacher's aide would not be

reflective of her earning capacity. **See id**. at 7. These findings are also supported by the record.

We note, however, "[w]hen the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses." Pa.R.C.P. 1910.16-2(d)(4)(i)(D). Here, it is undisputed Mother has been a stay-at-home mom for the past twelve years. Despite the children being in school, Mother testified that if she were required to work forty hours a week, she would require childcare for after school and during the summer months. **See** N.T., Support Appeal Hearing, 10/4/2022, at 15-16. The court did not address this in its reasoning. **See** Order, 11/3/2022.

Accordingly, as we are already vacating the child support obligation, we hereby direct the trial court to explicitly consider Mother's need for childcare to attain her imputed earning capacity. The court may, but is not required to, entertain additional evidence on this issue before reaching its conclusion. If the court finds that Mother would reasonably incur childcare expenses in attaining her earning capacity, the court must recalculate Father's child support obligation with this in mind.

Finally, Mother argues the trial court erred by assessing Father's income. Specifically, Mother claims it was error to average Father's self-employment income over a five-year period. Rather, Mother argues a three-year average

would more accurately reflect Father's current income under the support guidelines.

The trial court credited Father's testimony that his income fluctuated and spiked significantly in 2021, and that this was not indicative of Father's typical yearly income. *See* Trial Court Opinion, 4/13/2023, at 7-8. Our rules of civil procedure bar a trier-of-fact from adjusting a party's monthly net income due to normal or temporary earnings fluctuations. *See* Pa.R.C.P. 1910.16-2(d)(2)(iii). Accordingly, we cannot say it was error for the trial court to average Father's income on a longer time scale so as not to increase his average income disproportionately due to an atypical spike in his earnings.

Under these circumstances, we cannot conclude the trial court erred in calculating Father's income. However, we have determined the trial court abused its discretion regarding its deviation from the support guidelines. Further, we have concluded that the trial court erred in failing to explicitly address Mother's claim that she would require to pay for childcare to achieve the earning capacity the court imputed to her.

On remand, we direct the trial court to set Father's support obligation without consideration of the gift income received by Mother. Furthermore, the court must explicitly consider Mother's claim about childcare. If the court determines that childcare would reduce Mother's earning capacity, it is to recalculate Father's child support obligation pursuant to the modified earning capacity.

Appeal quashed with respect to spousal support. Order vacated with respect to child support. Case remanded for further proceedings with regard to Mother's earning capacity and setting child support without consideration of gift income received by Mother. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/28/2023