J-A16034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER BORICHEWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL C. BORICHEWSKI | : | No. 2383 EDA 2021 |

Appeal from the Order Entered October 11, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2007-25066,
PACSES 403109566

| | | |
|---|---|---|
| MICHAEL C. BORICHEWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JENNIFER BORICHEWSKI | : | |
| | : | |
| Appellant | : | No. 2384 EDA 2021 |

Appeal from the Order Entered October 11, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2007-25066,
PACSES 243114794

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 10, 2022**

Jennifer Borichewski (Mother) appeals from the October 11, 2021 order

of the Court of Common Pleas of Montgomery County (trial court) denying her

exceptions to the hearing officer's recommendation that she pay child support

_____

[*] Retired Senior Judge assigned to the Superior Court.

to her former husband, Michael C. Borichewski (Father).  On appeal, she

challenges the trial court's determinations of:  (1) Father's earning capacity;

(2) deviation from support guidelines; (3) proof of health insurance; and (4)

overpayment of support.  After review, we reverse the trial court's health

insurance determination but affirm in all other respects.

## I.

This child support dispute is in its fifth year after several remands from

the trial court to the hearing officer, as each successive remand led to both

parents filing exceptions to the hearing officer's recommendations until only

Mother filed exceptions.  In total, there were five rounds of exceptions.[1]

### A. First Round of Exceptions

Father and Mother married in 2001 and divorced in 2009.  Their

marriage produced two children:  M.B. (born February 2004), who is autistic

_____

[1] The trial court conducted the proceedings under Pa.R.C.P. 1910.12, which governs the procedure of officer conferences and hearings for support matters.  Under the procedure, a hearing officer "shall receive evidence, hear argument and ... file with the court a report containing a recommendation with respect to the entry of an order of support."  Pa.R.C.P. 1910.12(d).  "The court, without hearing the parties, shall enter an interim order consistent with the proposed order of the hearing officer."  *Id*. at 1910.12(e).  Following the entry of an interim order, Rule 1910.12 provides that at any party may file exceptions within twenty days and explains "matters not covered by exceptions are deemed waived[.]"  *Id*. at 1910.12(f).  If a party fails to request a hearing *de novo* or file exceptions, an interim support order is a final order.  **Vignola v. Vignola**, 39 A.3d 390, 394 (Pa. Super. 2012).  **See also** Pa.R.C.P. 1910.12(g) ("If no exceptions are filed within the twenty-day period, the interim order shall constitute a final order.").

and requires constant supervision; and T.B. (born September 2005). After the divorce, the parents split custody in a 50/50 arrangement and Father paid Mother $868.00 a month for support.

On December 29, 2017, Father petitioned to modify support after he was involuntarily terminated by his long-time employer, Merck. The hearing officer denied his petition as premature because he received severance that effectively continued his salary for a year. After both parties filed exceptions, Father filed a second petition to modify on June 8, 2018, claiming he had taken over full custody of the younger son on March 25, 2018.[2] On July 20, 2018, the trial court held that (1) the hearing officer correctly concluded that the first petition was premature, (2) remand was proper to determine whether Father's payments should be increased, and (3) Father's second petition would be heard at the remand hearing.

## B. Second Round of Exceptions

After the remand hearing, on January 17, 2019, the hearing officer issued two recommendations for the different custodial periods. The first addressed Father's first petition (Mother v. Father, PACSES #403109566), which covered when the parents split custody of both sons (December 29, 2017, to March 24, 2018). After calculating the parents' incomes, the hearing

---

[2] Mother later stipulated to this fact but only for purposes of the support matter because there is a pending custody dispute. **See** N.T., 12/6/18, at 5.

officer directed Father to pay support for both sons in the amount of $1,217.10 for the period, which included an upward ten percent deviation in Mother's favor because of Father's assets, which included a sizable inheritance that he received from his father.

For the second case (Father v. Mother, PACSES #243114794), which covered the period after Father took full custody of the younger son, the hearing officer directed Mother to pay support in the amount of $694.00 per month,[3] again applying a downward ten percent deviation in her favor. As for the period beginning January 1, 2019, because Father had yet to find new employment, the hearing officer assessed him with an earning capacity of $85,000.00. After applying another deviation in Mother's favor, the hearing officer directed her to pay $802.60 per month.

After both parties filed exceptions, the trial court remanded the matter a second time on May 29, 2019, directing the hearing officer to: (1) determine the parties' relative assets; (2) explain her justification for the ten percent deviation; (3) determine Father's inheritance from his father; (4) explain her assessment of Father's earning capacity; (5) set forth any interest or

---

[3] The hearing officer stated that this amount covered the period from June 8, 2018, to December 18, 2018. The trial court later directed the hearing officer to correct the period so that the support obligation was effective March 25, 2018, the date Father took full custody of the younger son.

dividends Father receives; and (6) recalculate the support under Pa.R.C.P. 1910.16-4(d), assuming the parties agreed the rule applied.[4]

### C. Third Round of Exceptions

On February 4, 2020, the hearing officer issued her recommendation addressing the issues. First, recognizing that Father had a much higher net worth than Mother, the hearing officer reevaluated her initial calculation and increased the deviation in Mother's favor to 20 percent. Second, addressing Father's earning capacity, the hearing officer explained her assessment by reviewing the factors under Pa.R.C.P. 1910.16-2(d)(4)(ii), particularly

---

[4] Pennsylvania Rule of Civil Procedure 1910.16-4(d) provides as follows:

> (1) *Divided or Split Physical Custody. When Each Party Owes Child Support to the Other Party*. When calculating a child support obligation and each party owes child support to the other party as a result of the custodial arrangement, the court shall offset the parties' respective child support obligations and award the net difference to the obligee as child support.
>
> * * *
>
> (2) *Varied Partial or Shared Custodial Schedules*. When the parties have more than one child and each child spends either (a) different amounts of partial or shared custodial time with the party with the higher income or (b) different amounts of partial custodial time with the party with the lower income, the trier of fact shall add the percentage of time each child spends with that party and divide by the number of children to determine the party's percentage of custodial time. If the average percentage of custodial time the children spend with the party is 40% or more, the provisions of subdivision (c) apply.

Pa.R.C.P. 1910.16-4(d)(1), (d)(2).

Father's increased child care responsibilities after taking full custody of the younger son while also still splitting custody of the older son. Finally, the hearing officer recalculated Mother's support obligation under Pa.R.C.P. 1910.16-4(d) now that Father had 100 percent custody of the younger son. Upon doing so, the hearing officer determined that a ten percent deviation in Father's favor rather than Mother's was warranted because Mother exercised no overnight custody.

After both parties filed exceptions again, the trial court issued its third opinion on August 31, 2020, stating that its task was "limited to a determination as to whether the [hearing officer] performed an appropriate analysis on the limited and enumerated issues." This task in mind, the trial court found no error in the hearing officer's determinations, including her assessment of Father's earning capacity and deviation in Mother's favor based on Father's assets. The trial court also agreed with the hearing officer's upward deviation in Father's favor for the younger son's support but increased it to 30 percent because Mother did not spend any custodial time with the younger son.

This did not end the matter, though, as the trial court determined another remand was needed for the hearing officer to make certain administrative adjustments, as well as for the parties to provide updated tax returns for 2018, 2019 and year-to-date 2020 income for her to determine whether any adjustments were proper.

**D. Fourth Round of Exceptions**

On December 28, 2020, the hearing officer issued her fourth recommendation with the directed adjustments. Both parties again filed exceptions. Relevant here, Father claimed that the cost of paying the sons' health insurance through his former employer Merck had significantly increased in September 2019 from the prior amount he used to pay of $228.00 per month. Mother, meanwhile, challenged Father being only ordered to pay her $6.00 a month for her overpayments through the years, which now totaled over $12,000.00.

After argument, the trial court issued its fourth opinion on May 19, 2021, remanding one last time for the hearing officer to address the health insurance and overpayments. However, because this matter had been going on for several years, the trial court directed the hearing officer's order be entered administratively without any further hearing. The trial court, though, directed Father's counsel to provide the hearing officer with "verification of the cost of health insurance, which shall be effective September 1, 2019, within 10 days of this Order (the verification shall include, but not be limited to, the breakdown of proportionate amounts that cover Father and the minor children.)."

**E. Fifth Round of Exceptions**

Father complied with the trial court's order and on May 27, 2021, Father submitted to the hearing officer a "Verification of Health Insurance Cost" in

which he attested that the cost of providing health insurance for himself and the two children had increased to $990.00 a month effective September 1, 2019. To validate this amount, Father attached a document showing automatic withdrawals from his checking account for the health insurance. Mother promptly objected via correspondence to the hearing officer, arguing that Father provided only unauthenticated proof of the cost of the health insurance. On June 17, 2021, the hearing officer issued her final recommendation in which she (1) adjusted the monthly health insurance premiums to $990.00 and (2) ordered Father to pay $40.00 per month on the overpayments.

Mother filed exceptions to reassert her challenges about the health insurance and overpayments. At the argument held on September 30, 2021, the trial court directed Father to provide additional documentation verifying the monthly cost of the health insurance and how it was being allocated between Father and the children. According to the trial court, Father submitted a packet of documents to the trial court the next day. After apparently receiving no response from Mother, the trial court issued its fifth and final opinion on October 11, 2021. First, the trial court found that Father substantially complied with providing verification of the monthly health insurance premiums. Moving on to overpayments, the trial court noted that Pa.R.C.P. 1910.19(g) provides the procedure for the overpayments of support: "[i]f either party objects, the domestic relations section shall

schedule a conference to provide the objecting party the opportunity to contest the proposed action." Accordingly, the trial court scheduled a conference in front of the hearing officer for November 17, 2021, limited to the issue of determining an appropriate repayment plan for Father.

Before that could happen, however, Mother filed these appeals, which we consolidated. Mother complied with Pa.R.A.P. 1925(b), and the trial court filed its Pa.R.A.P. 1925(a) opinion. On appeal, Mother raises these four issues:

> I.     Has the lower court distorted [F]ather's support obligation by miscalculating his earning capacity and then granting him a one-year vacation from work?
>
> II.    Has the lower court debased the whole concept of deviation by ignoring the important and compelling circumstances in this case implicating Pa.R.C.P. 1910.16-5(b)(1), (b)(5) and (b)(9), and by misunderstanding the assumptions under the support guidelines, thus improperly deviating in favor of the economically advantaged parent?
>
> III.   Did the lower court err under Pa.R.C.P. 1910-6(b) by assessing a health insurance premium amount and allocation solely on the basis of unilateral, unsolicited, unauthenticated, unreliable and incomplete information provided by an untrustworthy source while denying any opportunity—by way of an adversarial proceeding—for objection, cross-examination or challenge by contrary evidence, as required by the letter and spirit of Pa.R.C.P. 1910.12?
>
> IV.    Is the economically disadvantaged parent entitled to expeditious reimbursement consistent with Pa.R.C.P. 1910.19(g), after she forced—by incorrect orders, under threat of incarceration—to overpay child support by more than $12,000.00?

Mother's Brief at 11-12.[5]

## II. Father's Earning Capacity

### A.

In her first issue, Mother challenges the assessment of Father's earning capacity of $85,000.00, arguing that the hearing officer made a factual error in her analysis by relying on incorrect income figures when she considered Father's earning history. The contested part of the hearing officer's analysis reads as follows:

> Father's earnings history has been as a long-time employee for Merck. He consistently has earned in excess of $80,000 per year, and last worked as a market analyst for them when he was let go in late 2017. In 2017 he earned $93,711 as an employee of Merck and in 2016 his gross earnings were $105,854.

Hearing Officer's Order, 2/4/20, at 3 (record citations omitted).

_____

[5] Our standard and scope of review of a child support order is well-established:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**_Sichelstiel v. Sichelstiel_**, 272 A.3d 530, 534 (Pa. Super. 2022) (citation omitted).

Mother intuits that the hearing officer arrived at her assessment by taking the average of these two figures ($99,783.00) and multiplying it by 0.85 because she had determined, under the circumstances of the case, that Father had a capacity to earn 85 percent of what he had before.

She notes, however, that the figures used by the hearing officer represented only Father's federally taxed income from his W-2 forms rather than his much higher state and local wage amounts on those forms, which were $118,518.00 for 2017 and $125,863.00 for 2016. After averaging these two figures and applying the 85 percent assessment, Mother contends the hearing officer should have come up with an earning capacity of $104,000.00.

"A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Gephart v. Gephart*, 764 A.2d 613, 615 (Pa. Super. 2000). At the time the hearing officer considered this matter, Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4), which addresses earning capacity, provided, in pertinent part:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. **Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity**. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the

- 11 -

amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).[6]

Contrary to Mother's assertions, the hearing officer's earning capacity determination was not confined to the simple application of a mathematical formula. Instead, as required by the rule, she considered the enumerated factors and arrived at an assessment for which Father's earning history was but one factor considered among others.

Indeed, the hearing officer detailed how she arrived at her assessment:

At the time of the initial hearing of this matter on March 12, 2018, father testified that after a 25-year career at Merck he was let go due to company-wide layoffs and reorganization. The parties stipulated that his separation from Merck was through no fault of father (N.T. 3/12/18 p 12). At the time of the hearing, father was 51 years old, in relatively good health, had a Bachelor's Degree and a Master's Degree in Business (N.T. 3/12/18, p 6).

Father has made a good faith effort to secure alternate like-kind employment without success. He has taken advantage of the job placement services provided by Merck which assisted him with

_____

[6] Rule 1910.16-2 was recently updated with an expanded list of factors to be considered. Under the current version, which became effective January 1, 2022, "the trier-of-fact shall consider the party's: (A) child care responsibilities and expenses; (B) assets; (C) residence; (D) employment and earnings history; (E) job skills; (F) educational attainment; (G) literacy; (H) age; (I) health; (J) criminal record and other employment barriers; (K) record of seeking work; (L) local job market, including the availability of employers who are willing to hire the party; (M) local community prevailing earnings level; and (N) other relevant factors." Pa.R.C.P. 1910.16-2(d)(4)(ii).

updating his resume and LinkedIn profile (N.T. 3/12/18 p 22 lines 1-25). He has applied to numerous positions that would accommodate his child care schedule in "analytical and teaching categories... pharmaceutical sales, sales analyst, and sales training" (N.T. 3/12/18 p 24-25). Father has not been successful thus far, despite reasonable and exhaustive efforts in finding suitable employment. He has attempted to mitigate his circumstances.

Father's earnings history has been as a long-time employee for Merck. He consistently has earned in excess of $80,000 per year, and last worked as a market analyst for them when he was let go in late 2017 (N.T. 12/6/18 p 12 line 9). In 2017 he earned $93,711 as an employee of Merck (exhibit D-1) and in 2016 his gross earnings were $105,854 (exhibit D-2).

Father's child care responsibilities, particularly with regard to [M.B.], who is disabled, impact his ability to earn income. Additionally, Father has 100% of the parties' youngest child, [T.B.], who at the time of the hearing in this matter was 13 years of age.

Father and mother have 50/50 custody of the parties' oldest child, [M.B.]. The parties stipulate that [M.B.] is "severely autistic, and very disabled, requires consistent care and supervision and except for family members, he cannot be cared for by third party caregivers. It is extremely difficult to find any third party caregivers who are willing and/or capable to care for him" (N.T. 12/6/18 p 5 line 8).

While at Merck, father had great latitude in work hours and location. Father testified he worked "full-time hours... from the morning until early afternoon in which they allowed me to go home, get my son off the bus, and monitor-any particular help that I had to with [M.B.] while working from home" (N.T. 12/6/18 p 12 line 16). Father also testified that "Merck made accommodations for me so that I didn't have to travel, attend certain onsite meetings and made extensive accommodations knowing that at the drop of a hat, I might have to run home or to the hospital to take care of my son" (N.T. 12/6/18 p 13 line 21). Further, father has had difficulty finding staff to care for [M.B] (N.T. 12/6/18 p 15 line 5). Father has even taken additional custody of [M.B.] when the child was sick even though it was supposed to be mother's custodial time (N.T. 12/6/18 p 14 line

14-21). His job search for similar work environments has been unsuccessful. Unlike mother who has family support to care for Michael during her periods of custody, father has none. He has no family on whom he can rely. Additionally, he has [T.B.] 100% of the time and must be available for the responsibilities that go along with being solely responsible for his care. Finally, when father was able to find third party caregivers the cost per hour ranged from $25-$50 (N.T. 12/6/18 p 16 line 19) which at this point is not cost effective and not conducive to his caring for his sons.

Father must be available during his custodial time to get [M.B.] on the school bus at 6:20 am and retrieve him from the bus at 2:25 pm (N.T. 12/6/18 p 19).

Father's child care responsibilities, particularly as they relate to [M.B], compromise his ability to work at the same financial level as when he was employed with Merck. [M.B.] requires much care and supervision. Father has no family or friends that can assist in this regard, and mother has, in the past, demonstrated an inability to be flexible. with help even in emergency circumstances. Father testified that he was unable to be with his father in Seattle when he passed away because mother would not care for the children (N.T. 12/6/18 p 26 lines 15-17). Father is found to be credible in his testimony regarding his child care responsibilities. Father's job search and earning capacity are detrimentally impacted when his child care responsibilities are taken into account.

Taking into consideration father's age, education, work history, prior earnings and child care responsibilities, father is found to have an earning capacity of $85,000 per year. Father enjoyed a long and profitable career at Merck. His employer's flexibility permitted him great leeway in his work hours so that he was able to maintain his job while simultaneously caring for his children. Father has not found suitable employment with such flexibility. There is no dispute as to the monumental effort it takes to care for the parties' oldest child.

Hearing Officer Order, 2/4/2020, at 3-4 (record citations cleaned up).

As noted, we will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain

the support order. ***See Sichelstiel, supra***. Indeed, "A reviewing court does not weigh [earning capacity] evidence or determine credibility as these are functions of the trial court." ***Doherty v. Doherty***, 859 A.2d 811, 812 (Pa. Super. 2004) (citation omitted). Here, as the hearing officer's considered discussion shows, she considered not only Father's earning history but all the factors outlined in Rule 1910.16-2(d). In particular, the hearing officer focused on Father's child care responsibilities relating to M.B. and the difficulty Father had in finding employment that can accommodate the need for him to be available to attend M.B.'s needs, not to mention that Father also has 100 percent custody of the younger son, T.B.

Mother ignores this analysis, instead alleging that the hearing officer arrived at her earning capacity assessment by applying a mathematical formula—though implicitly—based on averaging Father's earnings history and then simply determining that it could be 85 percent of that history. Besides this proposition being belied by the hearing officer's own discussion, this Court has held that past earnings alone cannot support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. ***See D.H. v. R.H.***, 900 A.2d 922 (Pa. Super. 2006) (holding trial court erred in determining earning capacity based solely on party's most recent tax return).

There is no requirement in Rule 1910.16-2(d) that a party's earning capacity must be adjusted to reflect the enumerated factors, including earning

history; instead, the rule requires only that the factors "shall be considered in determining earning capacity." The hearing officer needed to do no more than consider Father's earning history in determining earning capacity, and she did that along with considering all the other factors. This Court will not, as Mother seems to ask, substitute the hearing officer's considered determination with the mechanical application of a formula for determining earning capacity that is not grounded in either statute or case law. Like the trial court, we find no abuse of discretion in the hearing officer's earning capacity determination.

**B.**

Mother also claims that the trial court miscalculated Father's earnings for 2018 by not combining his actual earnings, investment income and earning capacity, which, as discussed, she believes should have been $104,000.00. Adding these together, she asserts that the hearing officer should have imputed an income of $252,711.00 for 2018 for Father, rather than just his actual income for that year ($146,649.00), which is what was used.

The trial court addressed this complaint in its Pa.R.A.P. 1925(a) opinion:

> Here, Mother has repeatedly taken issue with the determination of Father's earning capacity to the extent that she believes that Father's 2018 income findings should combine Father's imputed earning capacity of $85,000 *in addition* to the $146,649 actual he earned as Merck severance (resulting in a total figure of $231,649—a much higher figure than Father has ever earned). However, Mother's assertion is misplaced as Pa.R.C.P. 1910.16-2(d)(4)(i)(A)(I) makes clear that the Officer ***shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position***. In combining both Father's earning capacity with his actual wages

- 16 -

and dividends, the court would effectively be imputing an earning capacity exceeding one full-time position.

While it may be argued that Father was not "working" to receive the $146,649 for the 2018 year (as it was partially based on his receipt of severance), this argument fails to consider that three (3) vital factors that were specifically considered in the Officer's February 4, 2020 Order:

(1) The parties stipulated that Father's separation from his prior job at Merck was through no fault of his own;

(2) Father's child care responsibilities exponentially increased when he was awarded one hundred (100%) full custody of the parties youngest child, [T.B.], **and** shared the custody of the holder child, [M.B.] (who is severely autistic and disabled); and

(3) That the Hearing Officer's analysis of Father's earning capacity considered whether Father could obtain employment remotely close to what he earned previously at Merck.

The consideration of the aforementioned three (3) points all support the Officer's finding for Father's earnings for 2018 as being based solely on his actual wages and dividends. Namely, because it was agreed upon that Father's separation was involuntary, the Officer did not impute an earning capacity in addition to his actual income for 2018; because Father would have increased child care responsibilities, the Officer did not assign an amount that would effectively prevent Father from fulfilling these responsibilities; and lastly, because Father was making good faith efforts to obtain other employment, to no avail, the Officer did not assign an earning capacity in addition to what Father earned as severance from Merck.

Trial Court Opinion (TCO), 2/18/22, at 15-16 (emphasis in original, footnotes omitted).

We find no error with this analysis. Mother cites no statute, rule or case law for her proposition that both Father's actual income and earning capacity should have been imputed to him, especially given Rule 1910.16-2(d) stating

that the trier-of-fact, "shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position[.]" Pa.R.C.P. 1910.16-2(d)(4)(i)(A)(I). Consistent with that rule, the hearing officer used Father's 2018 actual income for calculating support, which, in fact, exceeded his earning capacity. As the hearing officer found, Father made good-faith efforts in 2018 to find employment after being involuntarily terminated, but could not find employment that was both comparable to what he had with Merck and conducive to his increased child care responsibilities. As Mother cites no authority to the contrary, we find no error with Father's actual income for 2018 being used rather than his combined actual income and earning capacity.

### III. Deviation from Guidelines

In her second issue, Mother raises three complaints with the deviation determinations for the guidelines. The first two focus on the deviation in her favor, as she asserts it was too low because of the hearing officer's misapplication of the deviation factors under Pa.R.C.P. 1910.16-5; the third focuses on the deviation against her after Father took full custody of the younger son.

"[T]he support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes ... and the number of persons being supported." Pa.R.C.P.1910.16–1(a).

There is a rebuttable presumption that the guideline amount of child support is the correct amount. Pa.R.C.P.1910.16–1(d).

That said, "a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." ***Silver v. Pinskey***, 981 A.2d 284, 296 (Pa. Super. 2009). Rule 1910.16–5 addresses deviation from the guidelines as follows:

**(a) Deviation.**

(1) The trier-of-fact may deviate from the basic child support, spousal support, or alimony *pendente lite* obligation.

(2) If the trier-of-fact determines a deviation is appropriate based on the factors in subdivision (b), the trier-of-fact shall specify on the record or in writing:

(i) the calculated basic child support, spousal support, or alimony *pendente lite* obligation;

(ii) the reason for the deviation;

(iii) the findings of fact justifying the deviation;

(iv) the deviation amount; and

(v) in a spousal support or an alimony *pendente lite* action, the obligation's duration.

*Note:* The deviation applies to the amount of the support obligation and not to the amount of income.

**(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony *pendente cite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P.1910.16–5.

## A.

Mother first argues that the hearing officer erred in addressing only "the relative assets and liabilities of the parties" under subsection (b)(5). According to Mother, the hearing officer should have also considered the "unusual needs" fact under subsection (b)(1), as well as the catchall factor under subsection (b)(9), which directs the trier of fact to consider "other relevant and appropriate factors." Mother asserts that the other factor here is the extraordinary measures that her family members have to take in helping take care of M.B. and his needs while Mother maintains full-time employment and supports her children from her second marriage. She contends the hearing officer's failure to account for her family's caregiving efforts effectively results in her family subsidizing Father.

We first note that the factual basis for Mother's contention rests on a brief exchange during Father's testimony at the remand hearing.

[Q]: Who helps [Mother] care for [M.B.] when he's in her custody?

[Father]: Her father, her grandmother, her husband, and at times I've heard of cousins.

[Q]: Her father, Mr. Fonash, her attorney?

[Father]: Yes.[7]

[Q]: You don't have anybody that can help you like that?

[Father]: No.

N.T., 12/6/18, at 16. Mother objected to this testimony on hearsay grounds but the hearing officer overruled her, stating that the evidence was relevant and that Mother could testify on the matter when it was her turn. *Id*. Mother did not seek to develop any evidence at the remand hearing in support of her contention that deviation was proper under subsections (b)(1) and (b)(9) based on her family's caregiving efforts. During her testimony, Mother was not asked about her family members' efforts in helping taking care of M.B. while she worked, nor did she present any of her family members to testify about such efforts.

In any event, as this Court has explained, "Rule 1910.16–5(a) requires only that the trial court specify in writing or on the record the guideline amount

---

[7] Mother's father is an attorney and has served as her counsel throughout these proceedings.

for support and its reasons and factual justification for the amount of the deviation." ***E.R.L. v. C.K.L.***, 126 A.3d 1004, 1009 (Pa. Super. 2015). ***See also Silver v. Pinskey***, 981 A.2d 284, 296 (Pa. Super. 2009) (in child-support, once court has properly consulted guidelines, it may deviate from guideline figure, as long as court provides adequate reasons for deviation).

After the second remand, the hearing officer explained her factual justification for her 20 percent deviation in Mother's favor. While focusing on the relative assets of the parties, the hearing officer complied with Rule 1910.16–5(a) by explaining, as directed by the trial court, her factual justification for the 20 percent deviation. ***See*** Hearing Officer Order, 2/4/20, a 2-3 (quoted below). We will not find that the trial court abused its discretion by failing to discuss deviation factors for which, as noted, Mother failed to develop evidence. ***See E.R.L.***, ***supra*** (holding no abuse of discretion in trial court's consideration of deviation factors where it stated it considered all relevant factors and discussed its reasons for deviation).

**B.**

Mother next contends that the hearing officer misapplied the deviation factor under subsection (b)(5) by failing to give a larger deviation in her favor based on Father's net worth exceeding hers by over two million dollars. She believes that this vast disparity alone compels a 100 percent deviation. In support of her argument, she cites four cases: ***J.P.D. v. W.E.D.***, 114 A.3d 887 (Pa. Super. 2015); ***E.R.L.***, ***supra***; ***Colonna v. Colonna***, 855 A.2d 648

(Pa. 2004); and **Suzanne D. v. Suzanne W.**, 65 A.3d 965 (Pa. Super. 2013). In Mother's view, these cases involve similar factual scenarios where the parents' disparity in assets warranted a higher deviation than that given in this case.

Before reviewing those cases, however, we first look at the hearing officer's analysis. As noted, she agreed that a deviation was warranted based on Father having more assets than Mother. Based on this disparity, she applied a 20 percent deviation in Mother's favor. In so doing, though, the hearing officer clarified that she would not consider any of Father's assets part of the parties' divorce and equitable distribution. As she explained:

> There is no dispute that father has a much higher net worth than mother. As a result of this disparity there will be a 20% deviation in the support calculations in these matters.
>
> Father continued to work for an additional 8.5 years after Divorce. Any of the assets that originated as a result of his employment at Merck have values that include assets he received in Equitable Distribution. The current value of his stock options and 401k include: funds left after Divorce; increase in value of funds left intact after Divorce, and contributions made to these funds after Divorce.
>
> No deviation due to these funds will be considered. To do so would result in "double dipping" by mother. Mother received 60% of the value of these assets in Divorce. Husband's retained portion constitutes an asset that was considered in Equitable Distribution. Additionally, when support was calculated after separation, father's income took into consideration his gross income less taxes only. The funds he contributed to these assets were factored in as income available for support. The fact that he saved this money and did not squander it is of no consequence. It would be improper to have used that income as income available for support in the past, and now claim that those same funds should alleviate a portion of mother's support obligation by deviating in her favor.

- 23 -

Father inherited a substantial amount of money from his father, Joseph Borichewski. A review of the Estate documents show that he was to receive $856,864.94. The Estate has net assets of $2,570,594.82 and father was a one-third beneficiary. Father owed $31,794 in taxes as a result of the receipt of some of these funds, and paid off the mortgage on his home.

Father has reduced living expenses because he was able to pay off his mortgage from his inheritance. He has $70,476.12 in his Bank of America Checking account and $158,890.52 in his Bank of America Savings account. However, he is currently unemployed despite an exhaustive, diligent job search and has been held to an earning capacity of $85,000 per year. The liquid assets he has are sustaining him during what has turned out to be long-term unemployment, as well as assisting in the payment of his significant legal fees which totaled $105,000 for 2017 and 2018. This liability is one which mother has not incurred.

Father's separate non-marital assets as outlined above are significantly greater than mother's; therefore the 20% deviation is appropriate in the calculation of support. The existence of separate significant assets by a parent does not alleviate the obligation of the other parent to support their child. Mother's position is that she should receive a 100% deviation due to father's assets. The support of a child is a parent's paramount responsibility; and in this particular case one cannot overlook that father has 100% custody of the child Tyler and 50% custody of the child Michael. Mother has an obligation to provide for the support of these children according to her net income available for support despite father's separate assets. …

Hearing Officer's Order, 2/4/20, at 2-3 (record citations omitted).

With this analysis in mind, we find that none of the cases cited compel disturbing the hearing officer's determination. First, in *J.P.D.*, a trial court applied a 100 percent deviation against a father and increased his support payments because all his expenses were paid by his new wife, who earned nearly one million dollars in annual net income. *J.P.D.*, 114 A.3d at 890-91.

On appeal, this Court affirmed the trial court's deviation determination because it was supported by record evidence that all of father's income was available for child support. *Id*. at 891. Unlike *J.P.D.*, Father here does not have another source of income to rely on for paying his expenses; instead, as the hearing officer highlighted, he has had to rely on his liquid assets while he unsuccessfully sought comparable employment after his involuntary termination.

Second, in *E.R.L.*, the trial court deviated from the guidelines because the father not only had an earning capacity of $76,000, but also had access to around $600,000 from an inheritance that he received while litigation was pending. *See E.R.L.*, 126 A.3d at 1006. The father challenged the extent of the deviation on appeal but this Court affirmed, finding that the trial court was within its discretion in applying the deviation to ensure that the children had an appropriate level of financial support. *Id*. at 1009-10. We fail to see how *E.R.L.* supports disturbing the hearing officer's determination here, not to mention that the upward deviation in *E.R.L.* was just over 40 percent, which is not exponentially higher than what was applied here.

Third, in *Colonna*, our Supreme Court held that a trial court abused its discretion by failing to determine whether a deviation from the support guidelines is appropriate where the father's monthly income was about $193,000.00 and the mother's was $55,000.00, even if deviation resulted in the father, who had primary custody of the children, being ordered to pay the

mother with partial custody. *See Colonna*, 855 A.2d at 652. Again, we do not find that *Colonna* helps Mother's argument because (1) the hearing officer here applied a deviation because of Father's net assets, and (2) the *Colonna* Court's holding was limited to finding that "it is an abuse of discretion for the trial court to fail to consider whether deviating from the support guidelines, even in cases where the result would be to order child support for a parent who is not the primary custodial parent." *Id*. Indeed, the Court stated nothing about what percent of deviation should be applied when the parents' incomes differ significantly.

Finally, in *Suzanne D.*, the trial court applied an upward deviation to the father's support obligation because of regular gifts from the grandfather. *See Suzanne D.*, 65 A.3d at 968. This Court found that the trial court did not abuse its discretion in deviating upward because, "[t]he record reflects that Father's monthly income is almost doubled by Grandfather's gifts," which was "in addition to the expenses for the Children that Grandfather pays or reimburses." *Id*. at 973. Because there was no indication in the record that grandfather's gifts would cease and because gifts are an appropriate factor to consider whether to deviate, this Court held that the trial court did not abuse its abuse of discretion in the trial court's determination that a deviation was warranted. *Id*. Again, like the above cases, *Suzanne D.* does not compel a different result here, as this Court merely held that the trial court did not abuse its discretion where there was evidence supporting deviation, which

Mother observes was only 32 percent from the guidelines based on one party's assets.

Like we did with the hearing officer's earning capacity assessment, we find no error in her determination of a 20 percent deviation in Mother's favor based on Father having a higher net worth than Mother. Indeed, "a court has reasonable discretion to deviate from the guidelines if it appears to be necessary and the record supports the deviation." ***Ricco v. Novitski***, 874 A.2d 75, 82 (Pa. Super. 2005). As the above discussion shows, the hearing officer considered the disparity in assets and found that a deviation based on the disparity was appropriate. In so doing, however, the hearing officer explained why that disparity did not warrant the higher deviation sought by Mother, noting Father's assets that were part of the equitable distribution in 2009 as well as Father relying on his liquid assets as he could not find new employment while also retaining 50 percent custody of the older son and 100 percent custody of the younger son.

Mother fails not to address these points in her argument but, as reviewed above, also cites no case law that the hearing officer committed an abuse of discretion here by applying a 20 percent deviation in her favor. Like the earning capacity, determination of the proper percentage for deviation because of a disparity in the parents' assets cannot be reduced to a simple mathematical formula, and we decline to establish one here as Mother seems to be requesting. For these reasons, we find no merit with her second

deviation complaint about the hearing officer's application of Pa.R.C.P.1910.16–5(b)(5).

**C.**

In her final deviation subissue, Mother assails the trial court's 30 percent deviation in Father's favor for the support of the younger son after Father took over full custody of him. By way of background, the trial court increased the hearing officer's upward deviation in Father's favor from ten to 30 percent based on an explanatory comment to Pa.R.C.P. 1910.6-4, which provides:

> The basic support schedule incorporates an assumption that the children spend 30% of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Variable expenditures, such as food and entertainment, that fluctuate based upon parenting time were adjusted in the schedule to build in the assumption of 30% parenting time. Upward deviation should be considered in cases in which the obligor has little or no contact with the children. However, an upward deviation may not be appropriate if an obligor has infrequent overnight contact with the child, but provides meals and entertainment during daytime contact. Fluctuating expenditures should be considered rather than the extent of overnight time. A downward deviation may be appropriate when the obligor incurs substantial fluctuating expenditures during parenting time but has infrequent overnights with the children.

Pa.R.C.P. 1910.6-4, (Explanatory Comment 2010).

Mother asserts that the trial court misconstrued the 2010 comment by ignoring that the comment states that the deviation can either be upward or downward for the non-custodial parent. Mother contends that the focus should be on the non-custodial parent's expenditures for the child, not

custodial time. This, she believes, is made clear by the explanatory comment to Pa.R.C.P. 1910.16-1, which provides, in pertinent part:

> … the amounts of basic child support were adjusted to incorporate into the schedule the assumption that the children spend 30% of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. That does not mean that the entire schedule was reduced by 30%. Only those variable expenditures, such as food and entertainment, that fluctuate based upon parenting time were adjusted.

Pa.R.C.P. 1910.16-1 (Explanatory Comment 2010, E. Shared Custody). In Mother's view, this comment recognizes that when Father took over 100 percent custody of the younger son, only Mother's variable expenses such as food and entertainment for the younger son were affected, yet the trial court still felt it necessary to increase the upward deviation to 30 percent in Father's favor.[8]

We disagree with Mother's reading of the explanatory comments to Rules 1910.6-1 and 1910.6-4 as establishing that the trial court erred in its deviation determination. As both above explanatory comments recognize, the

---

[8] Father does not address the merits of Mother's claim, arguing that she has waived this issue for raising it for the first time on appeal. Mother, however, challenged the hearing officer's initial ten percent upward deviation in her exceptions to the hearing officer's February 4, 2020 recommendation. **See** Mother's Exceptions, 2/21/20, at ¶ 13c. Additionally, contrary to Father's contentions, Mother included this issue in her Pa.R.A.P. 1925(b) statement, and the trial court addressed the issue's merits in its Pa.R.A.P. 1925(a) opinion. **See** TCO at 19-22. As Father has failed to cite any analogous case law showing that Mother needed to do more to preserve this issue, we conclude we may address its merits.

amount of basic child support due under the support guidelines assumes that children spend 30 percent of their time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Even so, the explanatory comment to Rule 1910.16-4 notes that a court may make an upward deviation to basic child support in such cases, stating, "in cases in which the obligor has little or no contact with the children." The trial court has complete discretion to decide whether to grant an upward deviation. **See Morgan v. Morgan**, 99 A.3d 554, 560 (Pa. Super. 2014). Indeed, the upward deviation may not be appropriate where the evidence shows that the non-custodial parent still makes direct expenditures on the child's behalf even though the parent has infrequent overnight custody.

Here, Mother essentially argues that the trial court abused its discretion in deviating upward in Father's favor even though she had no parenting time with the younger son. However, at the remand hearing, Mother stipulated that Father had 100 percent overnight custody of the younger son (who was 13 at the time of the hearing) beginning on March 25, 2018. **See** N.T., 12/6/18, at 4. At that hearing, she presented no evidence that she still had infrequent overnight contact with the younger son or provided any meals and entertainment during daytime contact, let alone whether she had any daytime contact. Likewise, she presented no evidence of any fluctuating expenditures on the younger son's behalf that would warrant a downward deviation.

As there was no evidence that Mother had any expenditures on the younger son's behalf, the trial court withdrew the assumption built into the guidelines that Mother, as the non-custodial parent, was still providing for the younger son's living expenses up to 30 percent of the time. Put differently, the trial court merely deprived Mother of the built-in assumption into the guidelines that she spent 30 percent of the time with the younger son because, as she herself stipulated, Father had 100 percent custody of the younger son. As Mother has cited no case law or evidence to contradict the trial court's determination, we will not disturb its deviation determination.

### IV. Proof of Health Insurance

Next, Mother challenges the trial court's procedure for upwardly adjusting the monthly health insurance premiums from $228.00 to $990.00. As noted, the trial court's fourth and final remand directed the hearing officer to enter her new order "administratively, without the necessity of further hearings," and allowed for Father to submit verification of the increased cost of the children's health insurance. Based on this verification and over Mother's objection, the hearing officer increased the monthly health insurance premiums. Then, when Mother challenged this procedure in her exceptions, the trial court requested that Father submit additional documentation verifying that the health insurance for the children had increased to $990.00. Upon Father doing so, the trial court was "satisfied that Father is in substantial

compliance with providing verification of the monthly premiums such that the Order can be finalized." Memorandum and Order, 10/11/21, at 4.

On appeal, Mother asserts that this procedure deprived her of the opportunity to challenge Father's unauthenticated proof for the increased health insurance. Father counters that the trial court's procedure follows the expedited procedures for the admission of hearsay evidence at support proceedings under 23 Pa.C.S. § 4342, which provides, in pertinent part:

> **(a) General rule.--**The Supreme Court shall by general rule provide for expedited procedures for the determination of paternity and the determination and enforcement of support. The procedures shall include an office conference; a conference summary to the court by the hearing officer; an opportunity for the court to enter an order without hearing the parties; and an opportunity for the parties to demand a full hearing by the court.
>
> **(b) Alternate procedure.--**The Supreme Court shall also provide an alternate expedited procedure which may be adopted by local rule of the courts of common pleas. The procedure shall include an office conference; an evidentiary hearing before a hearing officer who shall be an attorney; a transcript of the testimony; a report and recommendation to the court by the hearing officer; and an opportunity for the filing of exceptions with and argument before the court.
>
> * * *
>
> **(f) Hearsay exception.--**For proceedings pursuant to this section, a verified petition, affidavit or document and a document incorporated by reference in any of them which would not be excluded under the hearsay rule if given in person is admissible in evidence if given under oath by a party or witness.

23 Pa.C.S. § 4342.

Father also cites Pa.R.C.P. 1910.29, which governs evidence in support matters. Rule 1910.29 provides, in pertinent part:

> **(a) Record Hearing.** Except as provided in this rule, the Pennsylvania Rules of Evidence shall be followed in all record hearings conducted in an action for support. A verified petition, affidavit or document, and any document incorporated by reference therein which would not be excluded under the hearsay rule if given in person shall be admitted into evidence if (1) at least 20 days' written notice of the intention to offer them into evidence was given to the adverse party accompanied by a copy of each document to be offered; (2) the other party does not object to their admission into evidence; and (3) the evidence is offered under oath by the party or witness. An objection must be in writing and served on the proponent of the document within 10 days of the date of service of the notice of intention to offer the evidence. When an objection is properly made, the Pennsylvania Rules of Evidence shall apply to determine the admissibility of the document into evidence.

Pa.R.C.P. 1910.29(a).

Given that this matter extended over five years with many hearing and is memorialized in 5800 pages of testimony, we understand the trial court's exasperation that led to it resolving the amount of the children's healthcare just by Father providing proof without the necessity of a hearing. However, Mother has a right to challenge the procedure.

Having said all that, we reluctantly vacate and remand because neither Father's verification to the hearing officer nor his submittal of new documents to the trial court met the requirements under Rule 1910.29 for evidence in support matters. Under Rule 1910.29, which Father tries to rely on, such verification cannot be admitted unless the other party does not object. The certified record shows, however, that Mother promptly objected to Father's verification by correspondence to the hearing officer dated May 28, 2021. *See* Mother's Exceptions 7/6/21, Exhibit M-3. As a result, the hearing officer could

not rely on Father's verification without first having an evidentiary hearing in which his proof of the increased health insurance premium was properly authenticated.

The same holds true for the trial court's procedure after argument on Mother's exceptions, as it directed Father's counsel to provide it with additional documentation showing that the monthly cost of the health insurance had increased to $990.00. Again, this procedure failed to satisfy Rule 1910.29 concerning evidence in a support matter, dispensing with the need to give the adverse party at least 20 days' notice of the hearsay evidence, thus giving the adverse party an adequate opportunity to object to the admission of the evidence.

We find that the trial court erred in allowing the monthly cost of the health insurance premiums to be adjusted based on hearsay evidence that was not properly admitted under Rule 1910.29.[9]

---

[9] Because the additional documentation submitted to the trial court was not made part of the certified record, Father filed a supplemental reproduced record containing the documentation. In response, Mother filed an application to strike the supplemental record and a portion of Father's brief, as well asking this Court to sanction Father for violating the Rules of Appellate Procedure. Since we grant Mother the relief she seeks on this issue, we deny her motion to strike as moot, as well as deny her request for sanctions.

## V. Overpayment of Support

In her final issue, Mother asserts that the trial court erred in declining to address the sizable credit that Father must pay her. As noted, the trial court ordered that the matter should be addressed in a remand to the hearing officer in accordance with Pa.R.C.P. 1910.19(g), which provides as follows:

> If there is an overpayment in an amount in excess of two months of the monthly support obligation and a charging order remains in effect, after notice to the parties as set forth below, the domestic relations section shall reduce the charging order by 20% or an amount sufficient to retire the overpayment by the time the charging order is terminated. The notice shall advise the parties to contact the domestic relations section within 30 days of the date of the mailing of the notice if either or both of them wishes to contest the proposed reduction of the charging order. **If either party objects, the domestic relations section shall schedule a conference to provide the objecting party the opportunity to contest the proposed action**. If neither party responds to the notice or objects to the proposed action, the domestic relations section shall have the authority to reduce the charging order.

Pa.R.C.P. 1910.19(g)(1) (emphasis added).

Consistent with this rule, a separate proceeding to address this issue of Father's payment of the credit was scheduled before Mother filed this appeal. After quoting Rule 1910.19(g), the trial court explained in its Pa.R.A.P. 1925(a) opinion:

> [T]he issue of Mother's overpayment/credit was to be addressed in a separate proceeding before Domestic Relations to determine the appropriate reduction in the charging order (such that the overpayment ostensibly could be exhausted by the time the order is terminated).
>
> Seeing that this case had dragged on long enough, the [trial court] took the initiative to appropriately secure a specific date

before the Officer, whereby the overpayment could be addressed pursuant to the Rule, without delay. However, this proceeding has since been delayed due to Mother's instant appeal.

As noted in the October 11, 2021 Order, the [trial court] secured November 17, 2021 for the parties to appear before the Officer and be afforded the opportunity to present their respective positions on the issue. This action would not have been appropriate within the last administrative remand directed by the undersigned which was focused on very limited and corrective action items. **The overpayment issue requires separate considerations and findings and should follow the process set forth in the Rule**.

Lastly, given that the amount of credit is so significant in this matter (over $12,000) and that Mother's monthly support obligation for two (2) children is so minimal ($201.01 a month), the Court believed it was prudent for the Officer to receive testimony from the parties on Father's ability to pay a lump sum at present and the fairness to the minor children with respect to a potential substantial reduction of the child support Order during their minority.

TCO at 27 (emphasis added).

After review, we find no error in the trial court's analysis for its chosen course of action. While Mother seeks to avoid another remand and have this Court mold the child support order to have Father reimburse her, we cannot conclude that the trial court abused its discretion in merely following the proper procedure as laid out in Rule 1910.19, which calls for further proceedings where either party objects to the proposed action for addressing overpayments. That is particularly needed here where, as the trial court aptly recognizes, there is such a sizable credit that the hearing officer should receive evidence of Father's ability to pay such a large amount.

We, thus, find that the trial court did not err in declining to address the overpayment issue. Accordingly, on remand, both the health insurance and the overpayments should be addressed.

Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2022