J-A22011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELENA SABAKAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID TYLER STACY | : | No. 236 WDA 2024 |

Appeal from the Order Entered February 9, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-18-008202,
PACSES No. 784117704

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: October 28, 2024**

Elena Sabakar (Appellant), *pro se*,[1] appeals the trial court's order dismissing her exceptions to the hearing officer's report and recommendation, adopting the hearing officer's recommendation, and *inter alia*, ordering David Tyler Stacy (Father) to pay monthly child support of $151.28. We affirm.

The parties married on November 7, 2008, and separated on February 28, 2018. The parties have one child (Child), a son born in November 2015.

The trial court provided the following summary of the history underlying this appeal:

_____

[1] Although this Court will "liberally construe materials filed by a *pro se* litigant, [an] appellant is not entitled to any particular advantage because [she] lacks legal training." **Elliot-Greenleaf, P.C. v. Rothstein**, 255 A.3d 539, 542 (Pa. Super. 2021) (citation omitted).

[Appellant] and Father were divorced in Allegheny County, Pennsylvania, in November of 2018, but continue to litigate issues arising from the [parties'] Divorce Settlement Agreement, as well as custody of [Child]. They currently have shared custody of [] Child, although both parents have filed petitions to modify that arrangement. [Appellant] was previously employed as a casino dealer and now operates her own business. N.T., Hearing, 5/22/23 at 131. Father works full-time for Carnegie Robotics, LLC. N.T., Hearing, 9/6/23 at 105.

A hearing on [Appellant's] petition was held over two days on May 22, 2023, and September 6, 2023. Both parties participated, but only Father had counsel at the time of the hearing[,] as [Appellant] was and continues to be self-represented. [Appellant] testified that ongoing medical issues impact her ability to work regular hours and that her earning capacity is less than $1,000 net per month. Hearing Officer's Summary at 2. The Hearing Officer found that [Appellant] had an earning capacity of $18 per hour and the ability to work 40 hours weekly[,] for 48 weeks annually. This resulted in a monthly net income of $2,248.40. *Id.* at 4. Father testified that he earns $21 per hour and periodically works overtime. N.T., Hearing, 9/6/23 at 105. The Hearing Officer calculated Father's monthly net income to be $2,811.81. Hearing Officer's Summary at 5. Under the guidelines, Father's child support obligation was found to be $255.73[,] which was reduced to $151.28 after subtracting [Appellant's] share of the childcare expenses. *Id.* at 6.

Trial Court Opinion, 4/11/24, at 1-2.

Appellant timely filed exceptions to the hearing officer's determination. On January 8, 2024, the trial court heard argument on the exceptions. As described by the trial court,

both parties presented their argument, with Father again represented by counsel and [Appellant] self-represented, and the matter was taken under advisement. Upon review of the record, transcript, [Appellant's brief on exceptions], and Father's Brief in Opposition, the exceptions were dismissed….

***Id.*** at 2. Mother timely appealed and filed her concise statement. As the trial court explained,

> Mother's statement lists the following question for review:
>
> Whether the trial court erred when it dismissed [Appellant's] exceptions to the Hearing Officer's Report and Recommendation entered on October 18, 2023.

***Id.*** (quoting Mother's Concise Statement)

Although Appellant identified one issue in her concise statement, she presents the following eight issues in her appellate brief:

> 1. Whether the trial court abused its discretion and/or committed an error of law when it assessed [Appellant's] earning capacity at $2,248?
>
> 2. Whether the trial court abused its discretion and/or committed an error of law when it determined Father's [monthly] income to be $2,812?
>
> 3. Whether the trial court abused its discretion and/or committed an error of law when it didn't deviate upward from the basic child support [award]?
>
> 4. Whether the trial court abused its discretion and/or committed an error of law when it calculated an arrears balance?
>
> 5. Whether the trial court abused its discretion and/or committed an error of law when it ordered [the costs of] all extracurricular activities (including [activities] not agreed upon by the parties) to be shared by the parties?
>
> 6. Whether the trial court abused its discretion and/or committed an error of law when it combined basic child support obligation with monthly childcare expenses?
>
> 7. Whether the trial court abused its discretion and/or committed an error of law when it didn't order the repayment of the transcript costs and the rescheduling fee as requested by [Appellant] in her Amended Pretrial Statement?

8.      Whether the trial court abused its discretion and/or committed an error of law when it didn't null the arrears balance of $8,087.28 established by [the Hearing Officer] on 05/11/2021?

Appellant's Brief at 5-6.

Before addressing these issues, we first determine whether Appellant's vague concise statement preserved any issues for our appellate review.  The requirements for a concise statement are clearly stated in Pa.R.A.P. 1925(b)(4):

[**(b)**]**(4)** *Requirements; waiver.*

**(i)** The Statement shall set forth only those errors that the appellant intends to assert.

**(ii) The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge.**  The judge shall not require the citation to authorities or the record; however, appellant may choose to include pertinent authorities and record citations in the Statement.

….

**(v)** Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal.

….

**(vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.**

Pa.R.A.P. 1925(b)(4) (emphasis added).

"[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived." *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017). A concise statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Commonwealth v. Price*, 284 A.3d 165, 170 (Pa. 2022) (quoting *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006)).

Appellant argues her issues "were sufficiently understood and considered, and the trial court correctly addressed each of the matters in its opinion." Appellant's Brief at 13. According to Appellant,

> this comprehensive consideration by the trial court, detailed in its opinion, implicitly affirms that the concise statement, <u>irrespective of its perceived stylistic deficiencies</u>, was not only comprehensible but also sufficiently informative to enable a complete judicial response to each matter. Therefore, all issues raised in the trial court are preserved for review and are substantively active for this Court's consideration. In this case, [Appellant] is raising the dismissed exceptions as separate matters complained of on appeal. It was unclear from the [Hearing Officer's] report whether the trial court accepted all of [Appellant's Physician Verification Forms (PVFs),] medical records, and records related to social security disability into evidence, but according to the trial court Opinion[,] "the Hearing Officer ultimately admitted [Appellant's] PVFs and medical records." Therefore, these matters are no longer in dispute.

*Id.* at 13-14 (emphasis added).

In its opinion, however, the trial court concluded Appellant waived all issues on appeal:

> [I]t is the [c]ourt's position that [Appellant's] Concise Statement fails to meet the requirements of Pa.R.A.P. 1925(b). Rule 1925(b)

- 5 -

requires an appellant's statement of errors to "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

The Superior Court addressed the application of this rule in *In re A.B.*, 63 A.3d 345 (Pa. Super. [] 2013). The mother in that matter submitted a similarly brief [s]tatement which listed a single issue: "The trial court erred when it failed to assure [m]other a fair hearing." *Id.* at 350. The [Superior] Court affirmed the trial court's order and held that [mother's] blanket statement on appeal waived any issues [she] may have had on appeal. The *A.B.* Court noted that "the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." *Id.* (brackets, internal quotation marks, and citation omitted). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Id.*

**Here, like in *A.B.*, [Appellant's Concise] Statement asks only whether the [trial] court erred in dismissing [Appellant's] exceptions. It fails to identify any error with specificity and only states in the broadest possible terms that the court made the wrong decision.** While [] Rule 1925 does go on to state that "each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court," it is the [trial court's] position that [Appellant's] individually raised exceptions are not "subsidiary issues" of whether the court erred in dismissing [Appellant's] exceptions. It is entirely possible that [Appellant] intends to allege a new error on appeal that the [trial court] has been unable to address. Without proper guidance from a Statement that fully complies with the rule, the court is precluded from writing a thorough and complete opinion under Rule 1925(a). As such, **the [trial court] finds that [Appellant] has waived any issue on appeal.**

Trial Court Opinion, 4/8/24, at 3-4 (emphasis added; some capitalization modified). We agree.

Contrary to Appellant's assertion, her failure to comply with Pa.R.A.P. 1925(b) is not a "stylistic" deficiency. ***See*** Appellant's Brief at 14. She now challenges the denial of each of her exceptions to the hearing officer's report and recommendation. However, Appellant failed to identify any particular issue in her concise statement. Consequently, we agree with the trial court: the issues now presented by Appellant are waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***Commonwealth v. Parrish***, 224 A.3d 682, 700 (Pa. 2020) ("[T]he mere fact that a court has authored an opinion addressing potential appellate issues does not excuse an appellant from complying with Pa.R.A.P. 1925(b).").[2]

Even if Appellant had preserved her issues for review, we would nevertheless conclude that each issue lacks merit. In child support cases, our standard or review is as follows:

> The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. **For our purposes, an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.**

---

[2] Instantly, the trial court generally addressed each of Appellant's exceptions to the hearing officer's recommendations.

*Isralsky v. Isralsky*, 824 A.2d 1178, 1186 (Pa. Super. 2003) (emphasis

added; internal citations and quotations omitted).

Appellant first argues that the trial court improperly assessed her

earning capacity at $2,248 per month. Appellant's Brief at 14. Appellant

claims her ongoing medical issues, including her recovery from breast cancer

and hypoferritinemia,[3] caused an involuntary reduction in her earning

capacity. *Id.* Appellant points out that the hearing officer and trial court

agreed with the PVFs establishing that Appellant's "ongoing hematological

disorder precludes her from maintaining continuous employment." *Id.* at 15.

Appellant disputes the trial court's finding regarding the duration of her

incapacity. *Id.* Appellant argues she

> is unable to engage in any employment for two weeks every 3
> months, resulting in 44 weeks left for employment. In the context
> of breast cancer treatment, the trial court erroneously concluded
> [Appellant's] cancer treatments had concluded….

*Id.* Appellant asserts she is still undergoing physical and occupational

therapy, and has developed cubital and carpal tunnel syndromes. *Id.* at 16.

Appellant argues that her conditions and treatments limit her ability to work,

and reduce her income to less than $10,000 per year. *Id.* Appellant also

---

[3] "Hypoferritinemia means low iron storage in the ferritin form, which could manifest as general weakness, easy fatigability, depressed mode, palpitation, and hair loss." Al-Jaffar, Hassan, Hypoferritinemia without anemia a hidden hematology disorder, (Aug. 28, 2024, 10:00 a.m.), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5629903/#:~:text=Hypoferr itinemia%20means%20low%20iron%20storage,the%20lungs%20as%20a% 20key.

identifies other physical limitations. *Id.* According to Appellant, the trial court improperly failed to consider these "critical aspects" in calculating her earning capacity. *Id.* at 16-17.

In addressing Appellant's challenge to the hearing officer's earning capacity calculation, the trial court correctly summarized the applicable law:

> [Pa.R.C.P.] 1910.16-2(d)(4) gives the trier of[ ]fact the discretion to assign an earning capacity to a party when that party willfully fails to obtain or maintain appropriate employment. The trier of fact must consider numerous factors when assigning an earning capacity including the party's employment and earning history, the local job market, and the party's age, education, and health. *Id.* **Such decisions often require an assessment of a witness's credibility.** And so, it is important to note that a hearing officer's report and recommendation, although only advisory, is to be given the fullest consideration on the question of credibility of witnesses because the hearing officer has seen the witnesses and assessed their behavior and demeanor. *See* … *Mott v. Mott*, 453 A.2d 1038, 1039 (Pa. Super. 1982).

Trial Court Opinion, 4/11/24, at 5-6 (emphasis added).

The trial court explained its findings and conclusions regarding Appellant's earning capacity:

> Here, [Appellant] testified that most recently[,] she owned a business where she would buy returns from Amazon, refurbish them, and then resell them on eBay. N.T., Hearing, 5/22/23 at 92. [Appellant] explained:
>
> > In 2019, when I had [$7,000] to $10,000 a month in gross revenue, I had three employees to assist with the business, and I was working 12, 16 hours per day, but not every day. On the days when I was able to work, I was working as much as I can.
>
> *Id.* at 95. However, [Appellant] stated that she has barely done any work as of late due to an iron deficiency that prevents her from working for weeks at a time. *Id.* at 93.

- 9 -

Both the Hearing Officer and the [trial court] spent a great deal of time reviewing [PVFs] submitted by [Appellant,] … as well as testimony from HBK Evaluation, Litigation & Forensics and letters from [Appellant's] physician…. The Hearing Officer correctly gave little weight to the witness from HBK given the time that had passed since the expert had conducted their investigation. Hearing Officer's Summary at 2. The [c]ourt also agreed with the Hearing Officer's assessment of [Appellant's] PVFs]:

Other than the aforementioned June [29, 2022,] PVF, the only record suggesting [Appellant's] inability to work is Exhibit V, which is a PVF dated April 10, 2023, but it is specifically limited to periods post-op from surgery related to [Appellant's] cancer treatment, which has been completed. The other references to [Appellant's] difficulties in working were the physicians referencing [Appellant's] statements to them and not their medical opinions.

*Id.* at 3. The Hearing Officer also considered [Appellant's] education and employment history[,] as they were explained in Father's Exhibit 14. Hearing Officer's Summary at [footnote] 2. The reduction from an earning capacity based on 52 work weeks annually to 48 [weeks] was reasonable given [Appellant's] testimony:

[The Hearing Officer]: Let me ask this question. When [the medical professional] says in there that you can work and you agree with that[,]; correct?

[Appellant]: When I feel healthy, yes.

[The Hearing Officer]: And how often is that?

[Appellant]: It appears to be every three months.

[The Hearing Officer]: So you can work.

[Appellant]: For three months. And then for two weeks I'm not able to work. I work for three months and then two weeks I'm not able to work.

- 10 -

N.T., Hearing, 9/6/23 at 42. Accordingly, the [trial c]ourt found no error of law or abuse of discretion in the Hearing Officer's recommendation and [Appellant's] first exceptions were properly dismissed.

Trial Court Opinion, 4/11/23, at 5-6. The trial court's findings are supported by the record and its legal conclusions are sound. This Court will not disturb the credibility determinations of the trial court. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) ("Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence."). Appellant would be owed no relief on her first issue.

In her second issue, Appellant challenges the trial court's determination of Father's earning capacity. Appellant's Brief at 18. Appellant asserts that Father's monthly income is $5,500, "because of consistent financial support from his father" (Grandfather). *Id.* at 19. Appellant claims the trial court erred by failing to include Grandfather's financial support in calculating Father's income. *Id.* Appellant explains that Father has received "consistent and substantial financial support from Grandfather for an extended period," including during the parties' marriage. *Id.* Father did not repay Grandfather. *Id.*

Appellant disputes the Hearing Officer's classification of Grandfather's contributions as gifts. *Id.* at 19. She further disputes that these gifts evolved into loans, arguing that a demand note is not proof of a loan. Appellant cites *Suzanne D. v. Stephen W.*, 65 A.3d 965 (Pa. Super. 2013), in support.

Appellant's Brief at 19. Appellant further points out Father's promissory note to repay Grandfather does not include repayment terms. *Id.* at 20. According to Appellant, "Grandfather's financial support must be treated like lump-sum awards and considered income." *Id.* at 22. We disagree.

The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support. *D.H. v. R.H.*, 900 A.2d 922, 931 (Pa. Super. 2006). "The assessment of the full measure of a parent's income for the purposes of child support requires 'courts to determine ability to pay from all financial resources.'" *Id.* at 930 (citation omitted). Thus, "[w]hen determining income available for child support, the court must consider all forms of income." *Arbet v. Arbet*, 863 A.2d 34, 40 (Pa. Super. 2004) (citation omitted).

For purposes of child support, "income" is defined by statute:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302. "While this definition is expansive, it includes neither gifts nor loans." *Suzanne, D.*, 65 A.3d at 970.

> In general, loans are not included in the calculation of income for support. Similarly, we have held that a gift is not income for purposes of determining child support. **Because a gift is given not in exchange for services, it does not meet the statutory definition of income. However, a gift may be considered as a reason for deviating from a guideline amount of child support.**

*Id.* (emphasis added).

Instantly, the trial court concluded Grandfather's loan to Father did not affect Father's income for child support purposes:

> [Appellant] also alleged an error with the Hearing Officer's calculation of Father's income. Unlike [Appellant's] employment, Father's calculations were much more straightforward. As explained by the Hearing Officer, Father is a full-time W-2 employee and periodically works overtime. The Hearing Officer calculated Father's income based on his paystubs, a 2022 W-2, and 2022 income tax returns, and determined his annual gross income to be $46,722. Hearing Officer's Summary at 4.

> [Appellant's] main issue concerns money lent to Father and his spouse by [Grandfather]. The money was secured by a promissory note dated June 5, 2022, that in pertinent part reads:

>> At the time Debtors are in the financial position to pay their monthly financial obligations once again, the total amount that has been loaned will be calculated and Debtors and Creditor will agree to a monthly repayment plan. It is anticipated that all monies shall begin being repaid within five years.

> N.T., Hearing, 9/6/23 at 141. **Father also testified that he is no longer receiving financial assistance from Grandfather.** *Id.* at 151. Given the nature of this note, its clear structure for eventual repayment, and Father's credible testimony, the [trial court] concurred with the Hearing Officer's analysis and found no reason to deviate from the guidelines.

- 13 -

Trial Court Opinion, 4/11/24, at 8 (emphasis added). The trial court's findings are supported in the record, and we will not disturb its credibility determination. *See S.W.D.*, 96 A.3d at 400. Appellant's second issue would merit no relief.

In her third issue, Appellant argues the trial court improperly failed to deviate upward from the basic child support guidelines. Appellant's Brief at 22. Appellant argues that an upward deviation is warranted based upon her medical issues, the disparity in the parties' incomes, and "to assist [Appellant] to maintain the standard of living to which [Child] is accustomed[.]" *Id.* Appellant disputes the trial court's determination that the income of Father's current wife does not justify an upward deviation. *Id.*

The trial court disagreed:

[Appellant] [] made the argument for a deviation in her favor based on the disparity in the parties' incomes. [Pennsylvania Rule of Civil Procedure] 1910.16[-1] explains that "[i]f the trier-of-fact determines that a party has a duty to pay support, there is a rebuttable presumption that the guideline-calculated support obligation is the correct support obligation." Pa.R.C.P. 1910.16-1(d). In determining whether to grant a deviation from the guideline, the Court must consider the following factors:

(1)   unusual needs and unusual fixed obligations;

(2)   other support obligations of the parties;

(3)   other income in the household;

(4)   ages of the children;

(5)   the relative assets and liabilities of the parties;

- 14 -

    (6)    medical expense not covered by insurance;

    (7)    standard of living of the parties and their children;

    (8)    in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

    (9)    other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b). "The trier of fact must carefully consider all the relevant factors and make a reasoned decision as to whether the consideration thereof suggests that there are special needs and/or circumstances which render deviation necessary." ***Elias v. Spencer***, 673 A.2d 982, 985 ([Pa. Super.] 1996). Furthermore, a deviation based on a spouse's income must be supported by testimony or evidence regarding the spouse's contributions towards joint household expenses. ***See McCarty v. Smith***, [665 A.2d 563, 566 (Pa. Super. 1995)].

Here, the [trial c]ourt agreed with the Hearing Officer's assessment and found that a deviation was not warranted. Not only did Father testify to requiring financial support from Grandfather, but [**Appellant**] **failed to elicit any testimony regarding whether Father's spouse contributes to the joint household expenses, if at all.** The mere fact that Father has remarried does not support a deviation from the guidelines. Without additional testimony or evidence to show any special needs of the Child or circumstances that would require a deviation, the [trial c]ourt found that the basic needs of the Child can be met by payment of the guideline amount.

Trial Court Opinion, 4/11/24, at 9-10 (emphasis added). We discern no abuse of the trial court's discretion, and would affirm on the basis of the above-stated reasoning. ***See id.*** Appellant's third issue would merit no relief.

In her fourth issue, Appellant argues,

[t]he trial court erred when it failed to establish an accurate arrears balance, as it abused its discretion by not accurately

- 15 -

determining the parties' incomes. At the time of this appeal, an estimated arrears balance is over $25,000.

Appellant's Brief at 23. Because we concluded the trial court properly determined the parties' incomes, Appellant's fourth issue would warrant no relief.

In her fifth issue, Appellant argues the trial court improperly ordered that the cost of all extracurricular activities for Child, including those not agreed upon, are to be shared by the parties. Appellant's Brief at 23. Without citation to any legal authorities or evidence of record, Appellant claims "[t]his provision constitutes a form of legal financial abuse, as it places an undue financial burden on [Appellant]." *Id.* at 24. Appellant asserts this provision will lead to contempt proceedings, "should Father unilaterally decide to enroll the child in any activity." *Id.*

> The trial court addressed this issue, and concluded it lacks merit:
>
> [Appellant's] … exceptions raised issues with the Hearing Officer's decision to include extracurricular activities …. Here, [Appellant] distinguishes between activities agreed to by the parties and those not agreed to, but critically failed to expand upon that difference in her brief. It remains unclear to [the trial court] if the Child is currently enrolled in any disputed activities[;] however[,] such matters are more appropriately resolved through the custody process.

Trial Court Opinion, 4/11/24, at 11. We agree, and would have affirmed the denial of relief on the basis of the trial court's above-stated reasoning. *See id.*

In her sixth issue, Appellant claimed the trial court improperly combined "the basic child support obligation with monthly childcare expenses." Appellant's Brief at 24. Appellant claims that in the previous support order, childcare expenses were addressed by means of a separate order. *Id.* Appellant points out the parties have a written agreement whereby Father agreed to pay expenses for extended-day child care. *Id.* at 25. Appellant asserts that Child is not presently using extended-day child care. *Id.* Appellant cites to no legal authorities supporting her argument.

"The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." *Estate of Lakatosh*, 656 A.2d 1378, 1381 (Pa. Super. 1995) (citing Pa.R.A.P. 2119(a)). "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority." *Iron Age Corp. v. Dvorak*, 880 A.2d 657, 665 (Pa. Super. 2005). Failure to cite relevant legal authority constitutes waiver of the claim on appeal. *See In re Est. of Whitley*, 50 A.3d 203, 209-10 (Pa. Super. 2012) (concluding that failure to cite legal authority to support single-paragraph issue waived issue for purposes of review).

Nevertheless, we observe that Pennsylvania Rule of Civil Procedure 1910.16-6(a) provides, in relevant part, as follows:

**(1)** The trier-of-fact:

**(i)** shall allocate reasonable child care expenses paid by the parties, if necessary to maintain employment or appropriate education in pursuit of income.

**(ii)** may allocate reasonable child care expenses paid by the parties when the trier-of-fact imputes an earning capacity to a party as provided in Pa.R.C.P. No. 1910.16-2(d)(4)(i)(D).

**(2)** The trier-of-fact may require that the obligor's share be added to the basic child support obligation, paid directly to the service provider, or paid directly to the obligee.

….

**(4)** The party seeking allocation of child care expenses shall provide to the other party the expense's documentation, such as a receipt or an invoice, promptly after receipt unless the service provider invoices the parties separately for the party's proportionate share of the expense.

**(5)** The trier-of-fact shall have the discretion to not allocate expenses if documentation is not timely provided to the other party.

Pa.R.C.P. 1910.16-6(a)(1)-(2), (4)-(5).

The trial court cogently addressed Appellant's sixth issue, and concluded it lacks merit:

[Appellant] also claims that the parties had a written agreement under which Father had agreed to pay all childcare expenses. **However, evidence of such an agreement was not presented during the hearing, and there was no testimony regarding whether the agreement would continue now that Father will be paying support rather than receiving it.** As such, the Hearing Officer properly allocated the childcare expenses in accordance with [Pa.R.C.P.] 1910.16-6.

Trial Court Opinion, 4/1/24, at 11 (emphasis added). We agree. Appellant failed to present evidence of this agreement, and failed to argue whether the

agreement would continue now that Father will be paying child support. Thus, Appellant's sixth issue would warrant no relief.

In her seventh issue, Appellant challenges the trial court's failure to order reimbursement for the transcription costs and a rescheduling fee, based on *in forma pauperis* (IFP) status. Appellant's Brief at 26. Appellant asserts various claims in this section of her brief. Appellant states that the costs to schedule a hearing with a hearing officer were not covered by her IFP status, and the Domestic Relations Section denied her request for a transcript fee waiver. *Id.* at 27. Appellant claims that "Father's attorney acted in bad faith by claiming [his attorney] properly objected to the introduction of [Appellant's PVFs]." *Id.* at 26. Appellant states the trial court found that Father's counsel made no objection. *Id.* According to Appellant, a hearing was rescheduled to address this issue. *Id.* Appellant cites to no legal authority to support her claim that she is entitled to waiver of the transcription fees. *Id.*; *see also* Pa.R.A.P. 2119(a).

The trial court rejected Appellant's exception on the transcription-fee issue:

> [Appellant] asserts that she was previously granted permission to proceed [IFP] and should not have been charged for the cost of obtaining a transcript or scheduling the second day of testimony. A review of the docket in this matter reveals that [Appellant] was indeed granted permission to proceed IFP on October 23, 2023[;] however[,] that **permission was limited to "Costs or fees to the Department of Court Records for a custody action."** As this is a child support matter, and the fees in question are paid directly to the Office of the Court Reporters or the hearing officer,

[Appellant] was responsible for payment and the Hearing Officer correctly decided the issue.

Trial Court Opinion, 4/11/24, at 12 (emphasis added). Even if Appellant had preserved this issue, we discern no error or abuse of the trial court's discretion in rejecting Appellant's claim. To the extent Appellant raises claims not anticipated by the trial court, we deem those claims waived for failure to include them in her Pa.R.A.P. 1925(b) concise statement. *In re M.Z.T.M.W.*, 163 A.3d at 466. Further, Appellant cites no legal authority that would support her claim. Under these circumstances, Appellant's seventh issue would warrant no relief on this basis as well. *See Est. of Whitley*, 50 A.3d at 209-10.

In her eighth and final issue, Appellant argues that the trial court improperly refused to nullify her arrears balance of $8,087.28, established by the Hearing Officer on May 11, 2021. Appellant's Brief at 27. Appellant acknowledges, however, that the transcript for this proceeding is not included in the record. *Id.* Appellant claims the unavailability of the transcript violated her civil right to due process, as it "rendered it impossible to contest the erroneous determination of the arrears balance[.]" *Id.*

The trial court addressed Appellant's issue as follows:

[Appellant] also raised the issue of her own arrears balance from a prior [child] support order[,] where [Appellant] was the payor. As the Hearing Officer correctly explained in the Hearing Summary, **there is no record that** [**Appellant**] **filed exceptions to the prior order or that** [**Appellant**] **ever petitioned** [**the trial court**] **for relief**. Hearing Officer's

Summary at 1.  Therefore, [the trial court] found the issue to have been waived as well.

Trial Court Opinion, 4/11/24, at 11 (emphasis added).  We agree and would affirm on this basis with regard to Appellant's eighth issue.  *See id.*  Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2024